515 A.2d 1327

**Donald L. ELLIS, Jr., and Jeanni E. Ellis, Individually and as Guardians of the Minor Donald L. Ellis, III, Appellants,**

**v.**

**Alfred J. SHERMAN, M.D., John G. Goedecke, Robert E. Stevenson, M.D., Donald F. Post, M.D., Sherman Associates, Paul A. Wengert, M.D., James E. Jones, M.D. and James Daly, M.D., Appellees.**

Supreme Court of Pennsylvania.

Argued May 16, 1986.

Decided Oct. 3, 1986.

Gerald S. Robinson, Harrisburg, for appellants.

James W. Evans, Harrisburg, for appellee Sherman Associates.

Linda S. Porr, Philadelphia, Peter J. Curry, Harrisburg, for appellee Paul A. Wengert, M.D.

Wiley P. Parker, Lebanon, C. Kent Price, Harrisburg, for appellee James Jones and James Daly, M.D.'s.

Robert E. Kelly, Jr., Harrisburg, for appellee Hamilton Health Center.

Christian S. Erb, Jr., Harrisburg, for appellee Glen Wheeler, M.D. etc. et al.

William W. Cahill, Jr., James G. Groves, Deborah G. Shortridge, Baltimore, Md., pro hac vice.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

The issue in this case is whether a child born with a hereditary disease may recover, in his own right, against medical doctors who treated his parents prior to his birth and who failed to inform the parents that the child might be born with a hereditary disease transmitted by the father. The essence of the child's claim is that he was injured by being born, that nonexistence is preferable to a diseased life of suffering.

The plaintiff in this case, Donald L. Ellis, III was born on April 16, 1980. He has a virulent form of neurofibromatosis (von Recklinghausen's Disease), which was transmitted genetically by his father, who has a mild form of the disease. *See Speck v. Finegold*, 497 Pa. 77, 81 n. 2, 439 A.2d 110, 112 n. 2 (1981) for a general description of neurofibromatosis. The parents allege they were unaware prior to the child's birth that the father had the disease or that it could be genetically transmitted. While the father's manifestations of the disease have been limited to spots and lesions of the skin, the child's manifestations include severe mental retardation, physical and motor development delay, deformity, and seizures.

On April 14, 1982, the Ellises, individually and in a separate action, on behalf of their son, sued in Trespass and Assumpsit the medical doctors who treated the father since childhood for a skin condition caused by a relatively minor form of neurofibromatosis; the surgeon who treated the father for this skin condition; and the doctors who treated and advised the Ellises with regard to the conception and birth of their son. The complaint alleges that although the first defendant treated the father for a skin disease, and although the surgeon removed skin lesions and even diagnosed them as being caused by neurofibromatosis, neither doctor told the father what his skin condition was or that it could be genetically transmitted. The complaint against the obstetricians is that although they took a medical history during which the mother told them that the father had a "skin condition," they failed to inquire further to discover the nature of the disease and whether it might be harmful to any child born to the couple. The Ellises state that if they had known of their risk of bearing a diseased child, they would have aborted the fetus.

The defendants filed preliminary objections in the nature of demurrers to each of the causes of action. The Court of Common Pleas upheld the parents' cause of action for medical malpractice as to all defendants, but dismissed their contract actions against the pediatricians and the surgeon as well as the child's medical malpractice action against all the doctors. The Ellises appealed the dismissal of the child's cause of action, and Superior Court affirmed. We granted allocatur solely to determine whether a child born with a debilitating disease may bring an action against medical practitioners who fail to advise his parents of the probability that he will be born with such a disease, thus foreclosing parental opportunity to avoid the pregnancy and to prevent his being born.

It is well established that in ruling on a demurrer, we are bound to accept as true all well-pleaded facts and to draw any inferences in favor of the plaintiff. In this case, the operative allegations and inferences are that all of the

doctor-defendants either negligently failed to diagnose the father's hereditary disease or, having diagnosed it, negligently failed to inform the parents of the existence of the disease so that they might exercise their right to avoid the birth of the diseased fetus.

In essence, this lawsuit is a medical malpractice action brought by a person who allegedly was injured by that malpractice, but who was not yet born at the time it occurred. The action is unusual in that the harmful act occurred prior to the plaintiff's birth, and unique in that plaintiff allegedly would not be alive but for the malpractice. The wrong for which plaintiff claims damages is that he was born, that he lives in his current physical and mental condition.

As in any medical malpractice action, in order to recover for the injuries alleged, the plaintiff must prove that doctor-defendant(s) owed him a duty of care; that they breached that duty; that the plaintiff was injured; and that the injuries were proximately caused by the defendant(s). Whether this action is legally cognizable will depend upon whether the plaintiff is able to establish each of these elements. Because it is our view that the child-plaintiff has not established that he was injured, we hold that the child has no cause of action for the alleged injury of his birth.

Firstly, we regard the assertion that the child has been injured by its existence as too speculative for us to determine. There is no question but that a diseased person has burdens not experienced by a healthy person. The uncertainty is, however, whether those burdens are so excessive that non-existence is, as a matter of law, preferable, for that is the essence of the complaint. Because of the nature of the complaint, in which the value of existence (a condition allegedly caused by defendants) is set off against the value of nonexistence (the condition allegedly wrongfully withheld), it is appropriate to compare the value of nonexistence to the plaintiff, as against the value of existence. The benefit rule provides:

Where the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred a special benefit to the interest of the plaintiff that was harmed, the value of the benefit conferred is considered in mitigation of damages, to the extent that this is equitable.

Restatement 2d of Torts, § 920 (1977).

It cannot escape our judicial notice that many diseased and deformed persons live contented lives and make significant social and personal contributions. Were we to recognize the child's claim that it was injured by being denied nonexistence, we would be required to speculate that this child, unlike other similarly situated persons, would be unable to derive any significant meaning, pleasure or satisfaction from its life, and therefore, that its *life* is of such minimal benefit as to constitute an injury. Because we have no way of knowing what opportunities will be available to this child or how the child will respond to life in general, we cannot say how the child's pain and suffering will compare to the benefits of its life, and thus, we cannot determine that its life constitutes an injury.

Secondly, we note that Black's Law Dictionary defines "injury" as follows:

Any wrong or damage *done to another,* either in his person, rights, reputation or property.... *An act* which damages, harms or hurts.

(Revised Fourth Ed.). (Emphasis added.) Thus an "injury" is a harm that is *inflicted* upon one person or entity by another. The condition about which the plaintiff complains, a diseased life, was inflicted upon the plaintiff not by any person, but by the plaintiff's genetic constitution. Thus, it may not be said that the plaintiff has suffered a legal injury, for even though his physical and mental condition is unfortunate, and even though this condition presumably would constitute a legal injury if it had been *inflicted* by some negligent or intentional act of another, in this case, *the condition was caused not by another,* but by natural processes. It is not, therefore, a legal injury.

Our conclusion does not rest on the idea that the plaintiff's life is as enjoyable and desirable as the life of a healthy person. Nor does our conclusion rest upon the belief that a diseased person is not in some popular sense "injured." Rather, it rests on the notion that plaintiff's life is, as are all our lives, sui generis, a thing defined by its own rules, an entity created by forces which no one controls or understands, a viability whose nature is a matter unto itself. When life comes into being unimpeded by outside forces, and is formed solely by its own internal controls, that life cannot be said to constitute an injury. One is not injured by being born with poor vision, or by catching the flu, or by contracting cancer. These maladies, which are to varying degrees, undesirable, are unfortunate occurrences, but in the absence of circumstances in which the poor vision, the flu or the cancer are inflicted by the acts of another, these conditions are not legal injuries. Instead, they are simply part of life. Legal injury connotes interference from without; it connotes the *disruption* of internal controls. Here the alleged interference was the *absence of interference* in a natural process.

For the foregoing reasons, we hold that a child born deformed and diseased as the result of the failure of physicians to inform its parents of the possibility of a diseased birth may not recover in its own right for being born diseased. The parents' right of recovery is not at issue in this case, and if they are able to establish their claim, they will recover not only for their own mental anguish but also for expenses related to the birth and care of their child. We need not be concerned, therefore, that this is a case in which the family of this child will be left without means to support and care for the child.*

Affirmed.

LARSEN, J., files a dissenting opinion.

* I am fully aware that this view represents a retrenchment from my position in *Speck v. Finegold*, 497 Pa. 77, 439 A.3d 110 (1981). Although the facts of *Speck* are strikingly different from the facts in this

LARSEN, Justice, dissenting.

I dissent. The majority holds that a child born with a hereditary disease may not recover, in his own right, against medical doctors who treated his parents prior to his birth, on three grounds: (1) damages are too speculative to determine; and (2) the child has no "legal" injury since the hereditary disease was not caused by another but by natural processes. I believe that neither of these grounds has merit.

With respect to the majority's conclusion that the child in this case cannot recover because damages are too speculative to determine, it is well-settled that

[d]ifficulties which may be encountered in precisely ascertaining damages cannot, in the interests of justice, deter recognition of a cause of action. As the United States Supreme Court has stated:

Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amends for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show that extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise.

case, the ultimate question in both cases is whether the life of a diseased child constitutes an injury for which it should be able to recover. In *Speck* I took the position that the child should be able to recover, but since that time, I have become increasingly persuaded that the injury in a case of this type is primarily an injury to the parents, for which recovery is permitted, and that the extension of recovery in cases of this type beyond that which is necessary to provide for the child's necessary care and treatment during its life can serve only to put further strains on an already overburdened tort system.

*Story Parchment Co. v. Paterson P. Paper Co.,* 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931).

*Speck v. Finegold,* 497 Pa. 77, 93 n. 5, 439 A.2d 110, 118 n. 5 (1981) (Opinion by Kauffman, J.) (additional citations omitted).

The majority also concludes that the child's injury in this case is not a "legal injury" because his disease was not caused by the doctors but by "natural processes." [1] Maj. Opinion at 1329. The child in this case, however, is not claiming that the doctors "caused his disease." Rather, his cause of action is based on the doctors' negligence in failing to inform his parents that there was a high probability that any child they had would suffer from neurofibromatosis, and his resulting life burdened with suffering and an exceptional need for medical and other assistance. "Any argument that this life of suffering is not the natural and probable consequence of [the doctors'] misconduct is rank sophistry." *Id.,* 497 Pa. at 92, 439 A.2d 118.

Where a child experiences suffering and financial expense as a result of another's negligence, that suffering and expense should be recompensed. As Justice Flaherty stated in *Speck v. Finegold, supra:*

> Those holding such views [that recovery must be defeated in all cases of this type] are apparently able to overlook what is plain to see: that—in cases such as this—a diseased plaintiff exists and, taking the allegations of the complaint as true, would not exist at all but for the negligence of the defendants. Existence in itself can hardly be characterized as an injury, but when existence is foreseeably and inextricably coupled with a disease, such existence, depending upon the nature of the disease, may be intolerably burdensome. To judicially foreclose consideration of whether life in a particular case is such a burden would be to tell the diseased, possibly deformed plaintiff that he can seek no remedy in the courts and to imply that his alternative remedy, in the extreme event

---

[1]. According to the majority, the child's disease is to be accepted as "simply part of life." Maj. Opinion at 20.

that he finds his life unduly burdensome, is suicide. No court in the land would directly send such a message to these plaintiffs.

*Id.*, 497 Pa. at 87, 439 A.2d at 115. It is unfortunate indeed that the majority of this Court is now sending that message.

The order of the Superior Court should be reversed.