585 A.2d 1091

**Gwendolyn JENKINS, Appellant,**

v.

**HOSPITAL OF the MEDICAL COLLEGE OF PENNSYLVANIA and Dr. Carol Grabowski and Dr. Dorothy M. Barbo.**

Superior Court of Pennsylvania.

Argued May 31, 1990.

Filed Jan. 31, 1991.

Mark Jurikson, Philadelphia, for appellant.

Nancy G. Rhoads, Philadelphia, for appellee.

Before ROWLEY, WIEAND, OLSZEWSKI, MONTEMURO, BECK, KELLY, POPOVICH, JOHNSON and FORD ELLIOTT, JJ.

ROWLEY, Judge: *

On March 8, 1984, appellant Gwendolyn Jenkins gave birth to a male child, Cory, who suffers from Down's syndrome. Immediately thereafter appellant underwent a tubal ligation, a sterilization procedure. In the present action against the Hospital of the Medical College of Pennsylvania and Doctors Carol Grabowski and Dorothy Barbo, the physicians attending at Cory's birth, all of whom are appellees herein, appellant asserts that if appropriate diagnostic procedures had been performed during her pregnancy, enabling her to learn that her unborn child was afflicted with Down's syndrome, she would have terminated the pregnancy and chosen not to undergo the tubal ligation.

Among the damages sought by appellant were the costs of raising a Down's syndrome child. The paragraphs of the complaint demanding such damages were struck by the trial court on the ground that they amounted to a legislatively prohibited claim for "wrongful birth." We are required to decide whether the trial court's order striking only a portion of appellant's complaint is final and appealable and, if so, whether the legislature's retroactive prohibition of actions for "wrongful birth" is unconstitutional.

Appellant's complaint, which was filed on October 29, 1986, is inartfully drafted. In Count I appellant makes

* This case was reassigned.

eighteen allegations of negligence against Doctors Grabowski and Barbo. These allegations may be condensed into two fundamental claims: 1) because the attending physicians failed to perform a timely amniocentesis test, which would have revealed the presence of Down's syndrome, appellant was deprived of the opportunity to terminate her pregnancy and avoid the sterilization procedure; and 2) the physicians performed the sterilization without appellant's informed consent, having failed to inform her that the child who had just been born to her suffered from Down's syndrome. In Count I appellant alleged the following losses:

28. As a direct result of the injuries aforementioned and caused solely thereby, Plaintiff has suffered great physical and mental and emotional pain and will continue to suffer such pain and anquish [sic] for an indefinite time into the future, all to her great detriment and loss.

29. As a direct result of the aforementioned injuries, Plaintiff has suffered a complete sterilization, which has left her unable to bear any further child, all to her great detriment and loss.

30. As a further result of the aforesaid, Plaintiff has been unable in the past, and may be unable in the future, to attend to her usual duties, occupations and avocations and has suffered a loss of earnings and future earning capacity, all to her great detriment and loss, financial and otherwise.

31. As a direct result of Defendants failing to perform the aforementioned diagnostic testing which resulted in Plaintiff delivering a child suffering from Down's Syndrome, which is a permanent medical condition, Plaintiff has suffered severe ecomonic [sic] loss and will continue to suffer tremendous economic costs in the raising of said child and in affording said child the appropriate medical treatment and care, as well as appropriate and necessary educational and other social services necessary for the child to have a life which is as normal as is possible under the circumstances.

32. As a direct result of the failure of Defendants to afford the appropriate diagnostic amniocentesis testing and availing Plaintiff of the opportunity to abort said pregnancy, Plaintiff has been unable to resume her prior employment opportunities and has suffered significant financial loss, all to her great detriment and loss, and will continue to do so for an indefinite time into the future in order to afford the appropriate treatment and care of Plaintiff's child, Cory Jenkins, who requires constant care and attention of Plaintiff, Gwendolyn Jenkins, and will need said care for an indefinite time into the future.

33. As a further result of the aforesaid, Plaintiff has been required and will be required in the future to expend and become liable for substantial sums of money for medicines, and medical treatment and care for herself and in particular, Plaintiff has incurred and is liable for the costs of the aforesaid sterilization procedures and hospitalization costs attending to the delivery of her child, Cory Jenkins, all of which would have been avoided if Plaintiff was timely made aware of the genetic abnormality of her child in time to abort said pregnancy.

Appellant concluded Count I with a claim for damages in excess of $20,000.00.

In Count II appellant incorporated the averments of Count I and contended that the hospital and the physicians had breached their contractual obligations by performing the sterilization procedure without her informed consent, thereby causing her "extensive monetary harm, including the cost of said sterilization procedures and possible future costs of medical treatment and care which may be incurred in the future to reverse said sterilization." Appellant again demanded damages in excess of $20,000.00. Appellees, in preliminary objections, moved to strike Count II on the ground that it duplicated Count I and was therefore redundant. In an order entered January 21, 1987, the trial court sustained appellees' objection and struck Count II, noting that it had no basis in law. Appellant has not appealed the order dismissing Count II.

Count III incorporated the previous averments and stated ten allegations of negligence against the hospital, including failure to monitor the acts of its physicians, failure to afford prenatal testing to appellant, and failure to set appropriate guidelines for the performance of sterilization procedures. Appellant sought damages in excess of $20,-000.00, specifying the following losses:

40. As a direct result of the injuries aforementioned and caused solely thereby, Plaintiff has suffered great physical and mental and emotional pain, and will continue to suffer such pain and anquish [sic] for an indefinite time into the future, all to her great detriment and loss.

41. As a direct result of the aforementioned injuries, Plaintiff has suffered a complete sterilization, which has left her unable to bear any further children all to her great detriment and loss.

42. As a further result of the aforesaid, Plaintiff has been unable in the past, and may be unable in the future, to attend to her usual duties, occupations and avocations and has suffered a loss of earnings and future earning capacity, all to her great detriment and loss, financial and otherwise.

43. As a further result of the aforesaid, Plaintiff has been required in the past and will be required in the future to expend and become liable for substantial sums of money for medicines and medical attention both for herself and for her child, Cory Jenkins, in and about endeavoring to secure treatment for her injuries and illnesses to her son, Cory Jenkins, all to her great detriment and loss, financial and otherwise.

44. As a direct result of Defendants failing to perform the aforementioned diagnostic testing which resulted in Plaintiff delivering a child suffering from down's [sic] Syndrome, which is a permanent medical condition, Plaintiff has suffered severe economic loss and will continue to suffer tremendous economic costs in the raising of said child and in affording said child the appropriate medical treatment and care, as well as appropriate and necessary

educational and other social services necessary for the child to have a life which is an [sic] normal as is possible under the circumstances.

45. As a direct result of the failure of Defendants to afford the appropriate diagnostic amniocentesis testing and availing Plaintiff of the opportunity to abort said pregnancy, Plaintiff has been unable to resume her prior employment opportunities and has suffered significant financial loss, all to her great detriment and loss and will continue to do so for an indefinite time into the future in order to afford the appropriate treatment and care of Plaintiff's child, Cory Jenkins, who requires constant care and attention of Plaintiff, Gwendolyn Jenkins and will need said care for an indefinite time into the future.

After the pleadings were closed, appellees moved for judgment on the pleadings with respect to paragraphs 31–33 and 43–45 of appellant's complaint. In an order entered December 6, 1988, the trial court granted appellees' motion and struck the specified paragraphs. In its opinion the trial court explained that the stricken paragraphs stated a claim for the wrongful birth of appellant's child. Such a claim, the trial court held, was barred by 42 Pa.C.S. § 8305, which reads in pertinent part as follows:

(a) **Wrongful birth.**—There shall be no cause of action or award of damages on behalf of any person based on a claim that, but for an act or omission of the defendant, a person once conceived would not or should not have been born.

Act of April 13, 1988, P.L. 336, No. 47, § 2, imd. effective. As the trial court noted, § 8 of the Act provided, with exceptions not relevant here, that the section just quoted should be given retroactive effect, including application to any case pending or on appeal.

In this timely appeal of the trial court's order of December 6, 1988, appellant contends that 1) the retroactive application of 42 Pa.C.S. § 8305 violates the due process and equal protection guarantees of the state and federal constitutions; 2) 42 Pa.C.S. § 8305 violates the separation of

powers doctrine; and 3) the prohibition of wrongful birth actions embodied in 42 Pa.C.S. § 8305(a) violates the right of injured plaintiffs to due process, equal protection, and privacy as guaranteed by the state and federal constitutions. Before addressing these issues, however, we are required to determine, as in every case, whether the appeal before us has been taken from a final order.

## I. APPEALABILITY

It is settled law that an appeal will lie only from a final order unless otherwise permitted by statute or rule. *Fried v. Fried*, 509 Pa. 89, 93, 501 A.2d 211, 213 (1985). In the present case, the trial court granted judgment on the pleadings as to six paragraphs of a three-count, forty-five-paragraph complaint. Although an order dismissing less than all counts of a multi-count complaint is generally not appealable, *Praisner v. Stocker*, 313 Pa.Super. 332, 337, 459 A.2d 1255, 1258 (1983) (*en banc*), such an order will be considered final and appealable if the dismissed count or counts are not merely alternate theories for recovery but instead state separate and distinct causes of action, *id.*, 313 Pa.Superior Ct. at 341–42, 459 A.2d at 1260.

In determining whether an order is final, we are required to consider the order's practical ramifications. *Pennsylvania Turnpike Commission v. Atlantic Richfield Company*, 482 Pa. 615, 618, 394 A.2d 491, 493 (1978) [quoting *Bell v. Beneficial Consumer Co.*, 465 Pa. 225, 228, 348 A.2d 734, 735 (1975) ]. As this Court *en banc* recently observed in *Motheral v. Burkhart*, 400 Pa.Super. 408, 583 A.2d 1180 (1990), "[i]n making this determination, we are guided by the Supreme Court's statement that '[a] pivotal consideration ... is whether the plaintiff aggrieved by [the order] has, for purposes of the particular action, been put "out of court" on all theories of recovery asserted against a given defendant for a given loss.' " *Id.*, 400 Pa.Superior Ct. at ——, 583 A.2d at 1184 [quoting *Sweener v. First Baptist Church of Emporium*, 516 Pa. 534, 539, 533 A.2d 998, 1000 (1987) ]. In other words, we look to see whether the claims

that have been dismissed and those that remain "request different relief for different harms...." *Daywalt v. Montgomery Hospital,* 393 Pa.Super. 118, 122, 573 A.2d 1116, 1118 (1990), quoted in *Motheral v. Burkhart,* 400 Pa.Super. at ——, 583 A.2d at 1185. In many cases an analysis of the relief requested will lead to resolution of the finality question; other cases will require the consideration of additional factors. *Garofolo v. Shah,* 400 Pa.Super. ——, 583 A.2d 1205, 1207 (1990) (*en banc*); *Motheral v. Burkhart,* 400 Pa.Super. at ——, 583 A.2d at 1185–86; *Trackers Raceway, Inc. v. Comstock Agency, Inc.,* —— Pa.Super. ——, 583 A.2d 1193, 1200 (1990) (*en banc*).

Turning to the facts of the present case, we note that in paragraphs 31–33 and 43–45, which were stricken by the trial court, appellant alleged that she had suffered the following losses:

31, 44: the "tremendous economic costs" of raising a Down's syndrome child, including medical and educational expenses;

32, 45: loss of earnings as a result of being required to give full-time care to the child;

33: appellant's own medical expenses, in particular the costs of the delivery and sterilization;

43: the medical expenses of appellant and her child.

As noted earlier, appellant's complaint is inartfully drafted. The three counts lack headings summarizing the causes of action stated therein, and the language of the three counts is both repetitious and less than explicit as to the nature of the claims being stated. In addition, appellant claims loss of earnings not only in paragraphs 32 and 45, which were stricken, but also in paragraphs 30 and 42, which remain.

Nevertheless, appellant's claim of injury in the form of the "tremendous economic costs" of raising her child, which is stated in dismissed paragraphs 31 and 44, appears nowhere else in the complaint. In addition, despite the confusing arrangement of the complaint, it was apparent to the parties and to the trial court that paragraphs 31–33 and 43–45 stated claims for damages allegedly resulting from

the "wrongful birth" of appellant's Down's syndrome child. As noted by the trial court in its opinion, "Defendants then motioned this Court for Judgment on the Pleadings maintaining that 43 P.S. [sic] § 8305(a) precluded the Plaintiff's *wrongful birth claims* set forth in paragraphs 31–33 and 43–45 of the Complaint" (Trial Court Opinion at 2; emphasis added). The trial court held that "[a]pplication of § 8305(a) to the instant case precludes Plaintiff's *cause of action based on the wrongful birth of her child*" (Trial Court Opinion at 3; emphasis added). The parties' dispute over the applicability of 42 Pa.C.S. § 8305(a) indicates that both understood appellant to have stated in paragraphs 31–33 and 43–45 "a claim that, but for an act or omission of the defendant, a person once conceived would not or should not have been born."

Appellant argues on appeal that her complaint, however inartfully drafted, states two separate and distinct causes of action:

CAUSE OF ACTION I:

An action alleging professional negligence (medical malpractice) stemming from Appellees [sic] negligence in failing to administer an amniocentesis procedure to Appellant Jenkins (even after she had specifically requested this test) in sufficient time to permit a therapeutic termination of this pregnancy. This type of claim has come to be known as a claim for "Wrongful Birth".

CAUSE OF ACTION II:

A cause of action alleging professional negligence (medical malpractice) stemming from Appellees [sic] failure to obtain the *informed consent* of Appellant prior to performing a sterilization operation on her, immediately after her Caesarian Section delivery of a child with Down's Syndrome. This cause of action is commonly known as a cause of action based upon "Lack of Informed Consent".

Supplemental Brief for Appellant at 8–9.[1] We agree. Appellant has not merely requested several types of relief for

1. At the request of this Court, both appellant and appellees filed supplemental briefs addressing the finality issue.

a single alleged harm. Instead, she has alleged two different harms—1) the birth of a Down's syndrome child, and 2) the sterilization performed without her informed consent—and has requested different relief for those different harms. Appellant has alleged not one loss, but two. While these causes of action could have been stated more clearly, they have been stated clearly enough.

Appellees, citing *Hull v. Tolentino*, 517 Pa. 328, 536 A.2d 797 (1988), urge us to view the trial court's order as interlocutory because it involved only a question of law, the resolution of which can be deferred until an appeal from a final judgment without causing irreparable harm to appellant. In *Hull v. Tolentino* the Supreme Court affirmed this Court's dismissal of an appeal from an order of the trial court precluding a party from asserting an affirmative defense, explaining that

> [i]f an affirmative defense turns on disputed facts and the trial court errs in precluding the assertion of that defense, the case must be retried if appellate review and a reversal occur after the entry of final judgment. Appellate consideration *before* trial in this circumstance would obviate the possible expense and burden of two trials. On the other hand, where an affirmative defense involves a question of law, the appellate court can simply apply the law to the outcome of the litigation should it find that the trial court abused its discretion in precluding the assertion of that defense.

*Id.*, 517 Pa. at 331, 536 A.2d at 798–99 (emphasis in the original).[2] In the present case, however, we cannot agree that appellant will not face the burden of a second trial if consideration of the issue raised in this appeal is postponed until a final judgment is reached on her remaining cause of action. If, at that point, appellant's constitutional challenges to 42 Pa.C.S. § 8305 are resolved in her favor, she will be faced with the necessity of proving those facts which

**2.** Three of six justices joined the opinion announcing the judgment of the Court; three joined a concurring opinion which expressed agreement with the Court's ruling.

are essential to her wrongful birth claim but which were not germane to her claim based on lack of informed consent.

We hold, therefore, that the trial court's order of December 6, 1988, which dismissed paragraphs 31–33 and 43–45, was a final order, as the dismissed paragraphs stated a separate and distinct cause of action for wrongful birth. Accordingly, we turn to the merits of appellant's appeal from the trial court's order.

## II.  CONSTITUTIONALITY

The constitutional issues raised by appellant have not heretofore been addressed by the appellate courts of this Commonwealth. Although constitutional challenges to the substantive provisions and retroactive application of 42 Pa. C.S. § 8305 were presented to this Court by *amici curiae* in *Butler v. Rolling Hill Hospital,* 382 Pa.Super. 330, 555 A.2d 205 (1989), *alloc. denied,* 522 Pa. 623, 564 A.2d 915 (1989), it was held that *amici* 's failure to notify the Attorney General of the challenge to the constitutionality of the statute as required by Pa.R.A.P. 521 resulted in the waiver of the constitutional issues. In the present case appellant has given the required notice to the Attorney General, who has filed a brief as *amicus curiae.* In addition, the holding of the Court of Common Pleas of Dauphin County in *Silcox v. Bower,* 109 Dauph. 203, 2 Pa.D. & C. 4th 248 (1989), that retroactive application of 42 Pa.C.S. § 8305 is unconstitutional, although worthy of our consideration, is not binding upon this Court.

It is a well-settled principle that our courts should not decide a constitutional question unless absolutely required to do so. *Krenzelak v. Krenzelak,* 503 Pa. 373, 381, 469 A.2d 987, 991 (1983); *Mount Lebanon v. County Board of Elections,* 470 Pa. 317, 322, 368 A.2d 648, 650 (1977). We cannot avoid doing so in the present case, as the appeal before us consists entirely of a challenge to the constitutionality of the substance and retroactive application of 42 Pa.C.S. § 8305. We can, however, limit the scope of our

inquiry in two respects. First, although appellant refers throughout her brief to 42 Pa.C.S. § 8305, it is only the constitutionality of subsection (a) of § 8305 that concerns us.[3] Second, we will initially consider only appellant's challenge to the retroactive application of this subsection. If we determine that the retroactive application of § 8305(a) is unconstitutional, consideration of the statute's substance becomes unnecessary.

■ As noted earlier, § 8 of the Act of April 13, 1988 provides that the Act shall be given retroactive effect. In attempting to demonstrate that the retroactive application of § 8305(a) is unconstitutional, appellant carries a heavy burden of persuasion. *Consumer Party of Pennsylvania v. Commonwealth*, 510 Pa. 158, 175, 507 A.2d 323, 331 (1986) [quoting *Pennsylvania Liquor Control Board v. The Spa Athletic Club*, 506 Pa. 364, 370, 485 A.2d 732, 735 (1984)]. A legislative enactment enjoys a strong presumption in favor of constitutionality and will not be invalidated unless it clearly, palpably, and plainly violates the Constitution. *Id.; Parker v. Children's Hospital of Pennsylvania*, 483 Pa. 106, 116, 394 A.2d 932, 937 (1978). In determining the legislature's intent in writing the statute at issue, we presume that the legislature did not intend to violate the state or federal Constitution. 1 Pa.C.S. § 1922(3); *Krenzelak v. Krenzelak*, 503 Pa. at 381, 469 A.2d at 991. All doubts must be resolved in favor of a finding of constitutionality. *Consumer Party v. Commonwealth*, 510 Pa. at 175, 507 A.2d at 332; *Parker v. Children's Hospital*, 483 Pa. at 116, 394 A.2d at 937.

As our Supreme Court held in *Barasch v. Pennsylvania Public Utility Commission*, 516 Pa. 142, 532 A.2d 325 (1987), *aff'd*, 488 U.S. 299, 109 S.Ct. 609, 102 L.Ed.2d 646

3. Subsections (b) and (c) are as follows:

**(b) Wrongful life.**—There shall be no cause of action on behalf of any person based on a claim of that person that, but for an act or omission of the defendant, the person would not have been conceived or, once conceived, would or should have been aborted.

**(c) Conception.**—A person shall be deemed to be conceived at the moment of fertilization.

(1989), "Neither the federal constitution nor our state constitution invalidates a non-penal statute merely because it is retroactive, unless such legislation impairs contractual *or other vested rights." Id.* 516 Pa. at 167, 532 A.2d at 337 (emphasis added). Appellant, relying principally on *Gibson v. Commonwealth,* 490 Pa. 156, 415 A.2d 80 (1980), contends that the retroactive application of 42 Pa.C.S. § 8305(a) impaired—in fact, extinguished—her vested right to bring an action for wrongful birth against appellees. Because that right of action, first recognized in *Speck v. Finegold,* 497 Pa. 77, 439 A.2d 110 (1981), was judicially rather than legislatively created, she argues, its abrogation by the legislature violates the separation of powers doctrine.[4]

The events leading to the Supreme Court's decision in *Gibson v. Commonwealth* began with the Court's abrogation of sovereign immunity on July 14, 1978, in *Mayle v. Pennsylvania Department of Highways,* 479 Pa. 384, 388 A.2d 709 (1978). Shortly thereafter the legislature, in the Act of September 28, 1978, P.L. 788, §§ 1 *et seq.* ("Act 152"), established sovereign immunity by statute. Section 5 of the Act expressed the legislature's intention to apply the Act to claims that had arisen before its promulgation. The five consolidated appeals before the Court involved claims against the Commonwealth and the Department of Environmental Resources for negligent supervision of a dam that had flooded, causing loss of life, limb, and property, on July 20, 1977. The Commonwealth Court granted appellees' motion to dismiss on the basis of Act 152. Appellants, acknowledging that their remedy for the alleged negligence of appellees would be completely extinguished if Act 152 were applied to their actions, contended that such retroactive application would violate Article I, § 11 of the Pennsylvania Constitution and the Fourteenth Amendment of the

4. Appellant states the issue as "[w]hether 42 P.S. Section 8305 intrudes upon the Separation of Powers Doctrine and is therefore invalid under the Pennsylvania Constitution" (Brief for Appellant at 3). Her reliance upon *Gibson v. Commonwealth* indicates, however, that her challenge in this regard is not to the statute in its entirety, but to its retroactive application.

United States Constitution, as their rights of action had accrued prior to the promulgation of the Act.

The Supreme Court agreed, describing as well settled the principle that "the Legislature may not extinguish a right of action which has already accrued to a claimant." *Id.* 490 Pa. at 161, 415 A.2d at 83.

> This Court has consistently held that the Legislature's repeal of a law which created a right of action does not disturb any actions accrued thereunder: "There is a vested right in an accrued cause of action.... A law can be repealed by the law giver; but the rights which have been acquired under it, while it was in force, do not thereby cease. It would be an absolute injustice to abolish with the law all the effects it had produced. This is a principle of general jurisprudence; but a right to be within its protection must be a vested right." *Lewis v. Pennsylvania R.R. Co.,* 220 Pa. 317, 324, 69 A. 821, 823 (1908) (quotations omitted)....

*Id.* (additional citations omitted). If the legislature could not disturb actions that had accrued under its own authority, then, the Supreme Court observed, the separation of powers doctrine suggested *a fortiori* that the legislature could not disturb actions that had accrued under the authority of the judiciary. "In the very nature of things, a law that is enacted after the case has arisen can be no part of the case." *Id.* [quoting *Menges v. Dentler,* 33 Pa. 495, 498–99 (1859) ]. Although appellants' cause of action arose prior to the Supreme Court's abolition of sovereign immunity in *Mayle,* the Court held that *Mayle* should be applied retrospectively. Appellants' claims, therefore, had accrued before Act 152 was promulgated and could not be extinguished by the Act. *Id.* 490 Pa. at 163, 415 A.2d at 84.

The holding of *Gibson* was relied upon in subsequent cases to bar the retroactive application of Act 152, *Kapil v. Association of Pennsylvania State College and University Faculties,* 504 Pa. 92, 470 A.2d 482 (1983); *Pechner, Dorfman, Wolffe, Rounick and Cabot v. Pennsylvania Insurance Department,* 499 Pa. 139, 452 A.2d 230 (1982);

*Brungard v. Mansfield State College,* 491 Pa. 114, 419 A.2d 1171 (1980); *Bershefsky v. Com., Department of Public Welfare,* 491 Pa. 102, 418 A.2d 1331 (1980), and of other legislation, *Dale National Bank v. Commonwealth,* 502 Pa. 170, 465 A.2d 965 (1983).

Applying the general rule, stated in *Gibson,* that a tort cause of action accrues on the date of the accident or injury, *id.* 490 Pa. at 162, 415 A.2d at 83, it is apparent that appellant's cause of action accrued on March 8, 1984, the date on which the allegedly wrongful birth of her son occurred. 42 Pa.C.S. § 8305(a) was not promulgated and made effective until April 13, 1988, more than four years later. Therefore, appellant argues, under *Gibson* § 8305(a) cannot serve to bar her cause of action for wrongful birth.

Appellees raise several objections to appellant's argument. They contend, first, that *Gibson* is inapplicable to the present case because § 8305(a) eliminates only one of appellant's possible causes of action against them, whereas Act 152 eliminated any possibility of recovery against the Commonwealth.[5] While this is indeed a distinction between the two cases, it is not a legally meaningful distinction. The Supreme Court's holding in *Gibson* was based on the "well-settled" principle "that the Legislature may not extinguish *a right of action* which has already accrued to a claimant." *Id.,* 490 Pa. at 161, 415 A.2d at 83 (emphasis added). Quoting Chief Justice Marshall in *Marbury v. Madison,* 5 U.S. (1 Cranch) 87, 102, 2 L.Ed. 60 (1803), the Court observed that "[t]he very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives *an injury.*" *Id.* 490 Pa. at 162, 415 A.2d at 83 (emphasis added). As noted in Part I of this Opinion, appellant has alleged two different harms and has requested different relief for those different harms. If appellant had stated only one cause of action against appellees, that for wrongful birth, appellees'

---

5. Although Act 152 listed eight exceptions to sovereign immunity, the appellants in *Gibson* conceded that none of the exceptions applied to their case.

attempt to distinguish *Gibson* would clearly be without merit. The applicability of *Gibson* is not changed by the fact that appellant has stated an additional, separate cause of action against the same defendants.

Appellees, citing the separation of powers doctrine, also note that it is within the legislature's power "to completely extinguish a cause of action...." *Parker v. Children's Hospital of Pennsylvania,* 483 Pa. 106, 127, 394 A.2d 932, 943 (1978). As to the legislature's power to do so *prospectively,* there is no dispute. The legislative power to abolish a cause of action *retrospectively,* however, is subject to the limitations set forth in *Gibson.*

Finally, appellees cite several cases that, in their view, uphold the retroactive application of legislative enactments. They point out that in *Sutliff v. Sutliff,* 518 Pa. 378, 543 A.2d 534 (1988), the Supreme Court held that the equitable distribution provisions of the 1980 Divorce Code could constitutionally be applied to property rights that had vested prior to July 1, 1980, the effective date of the Code. In fact, the Court noted in *Sutliff* that such a holding had previously been announced in *Bacchetta v. Bacchetta,* 498 Pa. 227, 445 A.2d 1194 (1982), and *Krenzelak v. Krenzelak,* 503 Pa. 373, 469 A.2d 987 (1983). As the Court explained in *Krenzelak,* its holding was based upon the state's authority, pursuant to its police power, to regulate the marital relationship: "Only if a person becomes party to a proceeding for divorce, and so more directly subject to the police power of the state, does [the equitable distribution] statute even have potential relevance...." *Id.,* 503 Pa. at 384, 469 A.2d at 992 [quoting with approval *Rothman v. Rothman,* 65 N.J. 219, 229–30, 320 A.2d 496, 502 (1974)]. The Supreme Court's holding in *Bacchetta, Krenzelak,* and *Sutliff,* limited as it is by the state's power to regulate the marital relationship, does not support appellees' contention in the case at bar.

The Supreme Court's opinion in *Singer v. Sheppard,* 464 Pa. 387, 346 A.2d 897 (1975) (plurality), cited by appellees as additional support for the retroactive application of

§ 8305(a), is also inapplicable here. In *Singer v. Sheppard* the Court sustained the constitutionality of § 301(a) of the Pennsylvania No–Fault Motor Vehicle Insurance Act, 40 P.S. §§ 1009.301(a), since repealed, against challenges that it 1) violated Article III, Section 18, of the Pennsylvania Constitution because it limited the damages recoverable by persons injured in motor vehicle accidents, 2) violated Article I, Section 11, of the Pennsylvania Constitution because it denied certain accident victims recourse to the courts, and 3) violated the equal protection clause of the Fourteenth Amendment to the United States Constitution by establishing unreasonable classifications among motor vehicle accident victims. Although the Court referred to the legislature's power to abolish a cause of action, *id.*, 464 Pa. at 397, 346 A.2d at 902, and observed that "[a] person has no property, no vested interest, in any rule of common law," *id.*, 464 Pa. at 399, 346 A.2d at 903 [quoting *Munn v. Illinois*, 94 U.S. 113, 4 Otto 113, 24 L.Ed. 77 (1876) ], the opinion does not address the retroactivity question that is now before us.

Finally, appellees point to *Clark v. Jeter*, 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988), as a case in which the United States Supreme Court "upheld the constitutionality of a Pennsylvania statute of limitations for paternity actions which operated retroactively" (Brief for Appellees at 18–19). This is a misinterpretation of *Clark v. Jeter*, in which the Supreme Court held that Pennsylvania's six-year statute of limitations for actions to establish paternity (since changed to eighteen years) violated the equal protection clause of the Fourteenth Amendment. In addition, appellant's claim that the statute was invalid because it conflicted with the federal Child Support Enforcement Amendments of 1984, which, according to appellant, required states to adopt retroactive eighteen-year statutes of limitations in paternity cases, was not reached by the Court, appellant having failed to present adequately a federal pre-emption argument to the courts of this Commonwealth. *Clark v. Jeter*, in short, bears no relevance to appellant's claims before this Court.

The Commonwealth, appearing as *amicus* to defend the constitutionality of the challenged statute, concedes that under *Gibson* "the legislature may not extinguish a cause of action which has already accrued under the authority of the judiciary" (Brief for *Amicus Curiae* at 12). The Commonwealth contends, however, that given the uncertain state of our case law relating to "wrongful birth," no such cause of action had accrued to appellant. In *Speck v. Finegold, supra,* the Commonwealth points out, an action had been brought against physicians whose allegedly negligent performance of a sterilization procedure and an abortion caused the "wrongful" birth. In the present case, appellant argues that appellees' allegedly negligent failure to perform an amniocentesis deprived her of the opportunity to prevent the birth of a severely handicapped child. The Commonwealth maintains that because appellant "would have had to argue for the expansion of liability under prior law" (Brief for *Amicus Curiae* at 12), the retroactive application of 42 Pa.C.S. § 8305(a) is constitutionally permissible.

It is undisputed that the facts of appellant's case are not identical to those of *Speck v. Finegold.* In the latter case, appellants were a husband and wife whose two children had inherited the genetic disease neurofibromatosis. Appellants decided not to have more children, and Mr. Speck underwent a vasectomy. Mrs. Speck nevertheless became pregnant with a third child. She underwent an abortion, which was not successful, and eventually gave birth to a daughter, who suffers from neurofibromatosis. The Specks brought a negligence action against the physicians who had performed the vasectomy and the abortion, seeking to recover, *inter alia,* the expenses attributable to the birth and raising of their daughter.

Although there are factual differences between *Speck v. Finegold* and the present case, the language of the Supreme Court in the former case argues against a narrow interpretation of the Court's holding. The Court began its analysis as follows:

As to the tort action brought by the parents, we view the action for injuries suffered as a result of negligently performed vasectomy and abortion procedures as merely requiring the extension of existing principles of tort law to new facts: damages alleged to result from the birth of an unplanned, unwanted, genetically defective child. It is fundamental that one may seek redress for every substantial wrong, and that a wrongdoer is responsible for the natural and probable consequences of his misconduct. *Since we believe that the parent-plaintiffs have suffered a substantial wrong, an action should be permitted in which the usual common-law principles of damages should be applied.* Further, since the alleged injury (mental distress at having to be the parent of a defective, diseased child) was foreseeable, mental distress damages should be recoverable also.

*Id.* 497 Pa. at 83–84, 439 A.2d at 113–14 (citations and footnote omitted; emphasis added).[6] In *Speck v. Finegold* the appellants alleged that as a result of negligently performed sterilization and abortion procedures, they suffered a compensable injury, i.e., the birth of a child who suffers from an incurable genetic disease. In the present case appellant alleges that as a result of the negligent failure to perform a procedure that would have informed her of the child's condition, she has suffered essentially the same compensable injury. The Supreme Court's emphasis in *Speck v. Finegold* on the basic principles of tort recovery suggests that in fact a cause of action accrued to appellant prior to the promulgation of § 8305(a).[7]

In *Mason v. Western Pennsylvania Hospital,* 499 Pa. 484, 453 A.2d 974 (1982), the Supreme Court declined to

**6.** The dismissal of the daughter's own "wrongful life" action was affirmed.

**7.** In *Silcox v. Bower,* 109 Dauph. 203, 2 Pa.D. & C. 4th 248 (1989), the Court of Common Pleas of Dauphin County reached the same conclusion, declining to limit the *Speck v. Finegold* decision to its facts and holding instead that the Supreme Court's decision in that case, as well as in *Ellis v. Sherman,* 512 Pa. 14, 515 A.2d 1327 (1986), "established the right, under appropriate circumstances, of a cause of action for wrongful birth...." *Id.* at 208, 2 Pa.D. & C. 4th at 255.

extend the holding of *Speck v. Finegold* to a situation in which an allegedly negligent sterilization led to the birth of a non-handicapped child. The Court held that the financial and emotional costs of raising a normal, healthy child were not compensable. *Id.,* 499 Pa. at 487, 453 A.2d at 976.

The Supreme Court's most recent comments on the wrongful birth issue appear in *Ellis v. Sherman,* 512 Pa. 14, 515 A.2d 1327 (1986). This case, like *Speck v. Finegold,* involved a child who suffered from neurofibromatosis. The child's parents brought suit on his behalf and on their own against the physicians who had treated the child's father for a skin condition caused by a relatively mild form of the hereditary disease and against the physicians who had treated and advised them regarding the child's conception and birth. They averred "that if they had known of their risk of bearing a diseased child, they would have aborted the fetus." *Id.,* 512 Pa. at 17, 515 A.2d at 1328. In response to preliminary objections in the nature of demurrers filed by the defendants, the trial court upheld the parents' own cause of action for medical malpractice but dismissed the medical malpractice action brought on the child's behalf. The dismissal of the child's cause of action was appealed, and the Superior Court affirmed.

The matter to be decided, as stated by the Supreme Court, was as follows:

> The issue in this case is whether a child born with a hereditary disease may recover, in his own right, against medical doctors who treated his parents prior to his birth and who failed to inform the parents that the child might be born with a hereditary disease transmitted by the father. The essence of the child's claim is that he was injured by being born, that nonexistence is preferable to a diseased life of suffering.

*Id.,* 512 Pa. at 16, 515 A.2d at 1327. The Court's view was that the child-plaintiff had not established that he was injured. Accordingly, the Court held that "a child born deformed and diseased as the result of the failure of physicians to inform its parents of the possibility of a

diseased birth may not recover in its own right for being born diseased." *Id.*, 512 Pa. at 20, 515 A.2d at 1329–30.

The Court then added the following comment, which is pertinent to the present case:

> The parents' right of recovery is not at issue in this case, and if they are able to establish their claim, they will recover not only for their own mental anguish but also for expenses related to the birth and care of their child. We need not be concerned, therefore, that this is a case in which the family of this child will be left without means to support and care for the child.

*Id.*, 512 Pa. at 20, 515 A.2d at 1330 (footnote omitted). Although the validity of the parents' own cause of action was not an issue before the Court, the ability of the parents to care for their child was obviously a matter of concern to the Court. The Court addressed this concern by noting that the parents had an ongoing cause of action for wrongful birth which, if successful, would enable them to recover for the costs of raising the child.[8] The Court's acknowledgment of the parents' cause of action is additional evidence that the type of claims made by appellant herein constituted a recognized cause of action prior to the passage of § 8305(a).

Finally, we note that this Court, in considering the purpose of the statute at issue, has observed that

> the legislature primarily was concerned with eliminating suits brought by children or their parents in an effort to recover damages for the failure to abort a child or negligently aborting a child. The legislature's expressed overriding concern was to prevent law suits leading to eugenic abortions of deformed or unwanted children.

**8.** In a footnote explaining his own change in position from *Speck v. Finegold,* Justice Flaherty, the writer of the Court's opinion in *Ellis v. Sherman,* stated that "I have become increasingly persuaded that the injury in a case of this type is primarily an injury to the parents, for which recovery is permitted...." *Id.* 512 Pa. at 20–21 n. *, 515 A.2d at 1330 n. *. In *Speck v. Finegold* Justice Flaherty had expressed the view that the child-plaintiff as well as the parent-plaintiffs should have been allowed to maintain a cause of action alleging negligence. As the Court in *Speck v. Finegold* was evenly divided on the issue, the Superior Court's order declaring that the child's cause of action was not legally cognizable was affirmed.

*Hatter v. Landsberg,* 386 Pa.Super. 438, 445, 563 A.2d 146, 150 (1989), *alloc. denied,* 525 Pa. 626, 578 A.2d 414 (1990). As a sponsor of the legislation explained, its objective was

> to stop a court-engendered policy which views the birth of a child, be that child handicapped or otherwise, [as] a damaging event for which someone should be punished ... and to prevent the practice of medicine, especially obstetrics and gynecology, from becoming coerced into accepting eugenic abortion as a condition for avoiding what are particularly wrongful birth lawsuits....

*Id.* at 443, 563 A.2d at 149 [quoting *Pa. Senate Leg.* 1961 (March 22, 1988)]. This language suggests that the type of action brought by appellant is precisely the type of action that was opposed by the legislative supporters of § 8305(a). In fact, this point is conceded by appellees. It would be unreasonable, therefore, to conclude that appellant's cause of action had not accrued prior to the passage of § 8305(a) simply because a cause of action based on the exact facts of her case had not been *"expressly* authorized by the judiciary" (Brief for *Amicus Curiae* at 12; emphasis added).

In sum, appellant's cause of action accrued on March 8, 1984, more than four years before the promulgation and effective date of 42 Pa.C.S. § 8305(a); her cause of action was a recognized one under the case law of this Commonwealth; and 42 Pa.C.S. § 8305(a), if applied to her case, would bar her from proceeding with her cause of action. The outcome of this appeal, given our Supreme Court's opinion in *Gibson v. Commonwealth, supra,* is therefore clear: Because "[i]t is well-settled that the Legislature may not extinguish a right of action which has already accrued to a claimant," *id.* 490 Pa. at 161, 415 A.2d at 83, we are constrained to hold, under *Gibson,* that 42 Pa.C.S. § 8305(a) may not constitutionally govern appellant's action. Accordingly, we reverse the trial court's order of December 6, 1988, insofar as it strikes paragraphs 31–33 and 43–45 of appellant's complaint, and we remand the case to the trial court for further proceedings consistent with this Opinion.

Order reversed in part; case remanded to the trial court for further proceedings consistent with this Opinion; jurisdiction relinquished.

WIEAND, J., files a concurring statement.

FORD ELLIOTT, J., concurs in the result.

KELLY, J., files a concurring and dissenting opinion.

BECK, J. files a dissenting opinion.

WIEAND, Judge, concurring statement:

The order of the trial court striking paragraphs from the plaintiff's complaint had the effect of putting plaintiff "out of court" on her cause of action for damages allegedly resulting from defendants' professional negligence in failing to administer to plaintiff an amniocentesis procedure in sufficient time to permit a therapeutic termination of her pregnancy. The remaining cause of action seeks to recover damages caused to plaintiff because the defendants allegedly performed a sterilization procedure on her, without her informed consent, following the birth of a child suffering from Down's Syndrome. These two causes of action are entirely separate and distinct. Therefore, under *Praisner v. Stocker*, 313 Pa.Super. 332, 459 A.2d 1255 (1983), the trial court's order was immediately appealable. For this reason, I concur in the majority's decision to review the merits of the trial court's order and join its determination thereof.

KELLY, Judge, concurring and dissenting:

I agree with the majority's analysis that the appellant's complaint contained two separate and distinct causes of action, one alleging wrongful birth of a child born with Down's syndrome due to her physicians' failure to perform an amniocentesis in order to alert appellant to the fetus' mental deficiencies in time for her to terminate the pregnancy, and another alleging negligence against the hospital for failure to monitor and set appropriate guidelines for the performance of sterilization procedures. The trial court

struck the portions of the appellant's complaint alleging a wrongful birth cause of action against the physicians and allowed the negligence action against the hospital to proceed. As the trial court's action placed the appellant "out of court" as to the wrongful birth cause of action, I agree that the order is a final order and therefore properly before us on appeal. *See Trackers Raceway, Inc. v. Comstock Agency, Inc., supra; Valley Forge Towers v. Ron–Ike F. Ins.,* 393 Pa.Super. 339, 574 A.2d 641 (1990).

However, I disagree with the majority's finding that 42 Pa.C.S.A. § 8305(a) which both prospectively and retroactively banned a cause of action for wrongful birth is unconstitutional. The majority holds that the retroactive application of the statute extinguished the appellant's already vested right to bring an action for wrongful birth, and therefore, is violative of *Gibson v. Commonwealth, supra,* which held that the legislature may not constitutionally eliminate a right of action which has already accrued to a claimant. (Majority Opinion at 1102). I disagree with the majority's conclusion that the wrongful birth claim as stated by the appellant in her complaint was recognized as a valid cause of action before the passage of 42 Pa.C.S.A. § 8305(a).

The majority bases its holding that the appellant's claims presented a valid cause of action which existed before the passage of 42 Pa.C.S.A. § 8305(a) on *Speck v. Finegold,* 268 Pa.Super. 342, 408 A.2d 496 (1979). In *Speck,* this Court permitted the parents of a child born with neurofibromatosis to maintain a cause of action to recover expenses attributable to the birth and raising of the child against the physicians who allegedly performed a failed vasectomy on the father and an unsuccessful legal abortion on the mother.

On appeal, our Supreme Court affirmed this Court's holding in *Speck v. Finegold, supra,* and recognized that under the narrow circumstances of this specific case, where the parents alleged that due to the physicians' negligence in the performance of both the vasectomy and the abortion,

both of which were performed for the express purpose of preventing the conception and birth of a child with neurofibromatosis, the parents could recover for the expenses attributable to the birth and raising of the child. *Speck v. Finegold,* 497 Pa. 77, 439 A.2d 110 (1981).

However, shortly thereafter, in *Mason v. Western Pennsylvania Hospital,* 499 Pa. 484, 453 A.2d 974 (1982), the Supreme Court refused to allow the appellant, who was the victim of an allegedly negligent sterilization procedure, to recover for the birth of a healthy child. Thus, the Court limited its holding in *Speck v. Finegold, supra,* to the narrow set of circumstances found in that case.

The majority also cites *Ellis v. Sherman, supra,* as basis for its determination that a wrongful birth cause of action existed prior to the passage of 42 Pa.C.S.A. § 8305(a). However, the issue of wrongful birth was not before the Court in that case, rather the issue was whether a child born with neurofibromotosis could recover for wrongful life. *Ellis, supra. See also* 42 Pa.C.S.A. § 8305(b). The Court found that no such cause of action existed and affirmed the trial court's dismissal of the wrongful life cause of action. The majority instead emphasizes the Court's comments about the parents' claims against their physicians for failing to inform them that the father's neurofibromatosis condition could be passed on to their children. *Id.* at 1330. However, these comments were not germane to the wrongful life issue before the Court and thus should not be used as a definitive statement of our Supreme Court's recognition of the existence of a cause of action for wrongful birth in all circumstances before the passage of 42 Pa.C.S.A. § 8305(a).

The only case relied upon by the majority which makes a definitive finding that wrongful birth existed as a valid cause of action before the passage of 42 Pa.C.S.A. § 8305(a) is *Silcox v. Bower,* 109 Dauph 203, 2 Pa.D. & C. 4th 248 (1989). In *Bower,* a common pleas court held, using much the same analysis as the majority instantly, that a cause of action for wrongful birth existed in all circumstances before

the passage of the statute. Therefore, the retroactive application of the statute extinguished the plaintiff's right to bring a wrongful birth suit and thus is unconstitutional. *Silcox v. Bower, supra* 2 Pa.D. & C. 4th at 253 *citing Gibson v. Commonwealth.*

As recognized by the majority, the decision of a common pleas court is not binding precedent and it is not incumbent upon this Court to follow its decision in such a highly unsettled area of law, especially when it comes to calling an act of the legislature unconstitutional. As such, I differ with both the *Bower* Court and the majority's expansive interpretation of *Speck v. Finegold, supra.* I find that the holding in *Speck v. Finegold* was intended to be limited to the specifically egregrious allegations contained in the parents' complaint. Thus, I find that the limited factual holding in *Speck* cannot and should not be used as a basis for the majority's blanket finding that a judicially established wrongful birth cause of action existed before the passage of the statute. *See Mason v. Western Pennsylvania Hospital, supra.*

Moreover, I disagree with the majority's application of the limited factual holding of *Speck v. Finegold, supra,* to the instant case. The majority finds that the failed vasectomy and unsuccessful abortion which are alleged to have occurred in *Speck* are analogous to the appellant's instant allegations that her physicians' failure to perform an amniocentesis was the legal cause of the birth of a child with Down's syndrome. I find the instant case clearly distinguishable from the limited holding set forth in *Speck,* especially in light of the dangers associated with the amniocentesis procedure. *See Hickman v. Group Health Plan, Inc.,* 396 N.W.2d 10 (1986) (the risk of a woman over thirty-five bearing a child with Down's syndrome is said by medical experts to be one in three hundred, while the chances of fetal death due to amniocentesis are between one hundred and one in two hundred). Thus, I find the facts set forth in the instant case are not analogous to our

Supreme Court's limited finding of a wrongful birth cause of action in *Speck v. Finegold, supra.*

Accordingly, as I cannot find any case law which established a blanket cause of action for wrongful birth before the passage of 42 Pa.C.S.A. § 8305(a), I find that based on the facts alleged in her complaint, the appellant did not have a vested right to bring a wrongful birth action which was extinguished by the retroactive application of 42 Pa.C.S.A. § 8305(a). Thus, on the basis of the facts presented instantly, I find the statute to be in compliance with both *Barasch v. Pennsylvania Public Utility Commission, supra* and *Gibson v. Commonwealth, supra*, and therefore, constitutional. Hence, I dissent to the portion of the majority opinion finding 42 Pa.C.S.A. § 8305(a) unconstitutional and would affirm the trial court's dismissal of the appellant's wrongful birth claim.

BECK, Judge, dissenting:

The issue presented is whether an order dismissing six out of forty-five paragraphs of appellant's complaint is a final and immediately appealable order under *Praisner v. Stocker*, 313 Pa.Super. 332, 459 A.2d 1255 (1983). I dissent from the majority's holding that this order is final and would hold that the order appealed from is interlocutory. Since the appeal must be quashed, I would not address the constitutional issue raised by appellant.

Appellant Gwendolyn Jenkins sued the Hospital of the Medical College of Pennsylvania and two doctors practicing at the Hospital, Dr. Grabowski and Dr. Barbo ("appellees"), in a three count complaint. Appellant avers that she received medical care relating to her pregnancy and the delivery of her child at the Hospital, that the medical care was negligently provided and that in treating appellant the Hospital and its doctors acted without appellant's informed consent. More specifically, appellant contends that appellees should have performed diagnostic testing on appellant and that their failure to do so prevented them from detecting that appellant's child was afflicted with Down's Syn-

drome. Appellant also contends that appellees should not have performed a sterilization procedure on appellant immediately after the birth of the child when they knew that the child they had just delivered had Down's Syndrome but appellant, who was under anesthesia, was not aware of her child's condition.

Appellant's complaint is inartfully drafted. Although it is divided into three counts, the allegations in each count repeat and overlap the allegations in the others. The first count, against the doctors only, contains a laundry list of allegations of negligence, some of which generally allege that the medical care provided to appellant was inadequate and some of which specifically relate to the contentions set forth above. The second count, against the doctors and the Hospital, incorporates the allegations in the prior count but characterizes them as breach of contract.[1] The third count, against the Hospital only, also incorporates all of the allegations of the prior counts. It too contains a laundry list of negligence allegations relating to the generally inadequate medical care of appellant, the failure of the Hospital to train and supervise its doctors, and the failure of the Hospital to assure that appellant would receive proper diagnostic testing and would not suffer a sterilization procedure without her informed consent.

In all counts, appellant sought recovery for the same basic alleged losses. In count I, appellant alleged the following losses:

28. As a direct result of the injuries aforementioned and caused solely thereby, Plaintiff has suffered great physical and mental and emotional pain and will continue to suffer such pain and anguish for an indefinite time into the future, all to her great detriment and loss.

29. As a direct result of the aforementioned injuries, Plaintiff has suffered a complete sterilization, which has left her unable to bear any further child, all to her great detriment and loss.

---

1. This count was dismissed by the trial court as being redundant. Appellant did not appeal the order dismissing count II.

30. As a further result of the aforesaid, Plaintiff has been unable in the past, and may be unable in the future, to attend to her usual duties, occupations, and avocations and has suffered a loss of earnings and future earning capacity, all to her great detriment and loss, financial and otherwise.

31. As a direct result of Defendants failing to perform the aforementioned diagnostic testing which resulted in Plaintiff delivering a child suffering from Down's Syndrome, which is a permanent medical condition, Plaintiff has suffered severe economic loss and will continue to suffer tremendous economic costs in the raising of said child and in affording said child the appropriate medical treatment and care, as well as appropriate and necessary educational and other social services necessary for the child to have a life which is as normal as is possible under the circumstances.

32. As a direct result of the failure of Defendants to afford the appropriate diagnostic amniocentesis testing and availing Plaintiff of the opportunity to abort said pregnancy, Plaintiff has been unable to resume her prior employment opportunities and has suffered significant financial loss, all to her great detriment and loss, and will continue to do so for an indefinite time into the future in order to afford the appropriate treatment and care of Plaintiff's child, Cory Jenkins, who requires constant care and attention of Plaintiff, Gwendolyn Jenkins, and will need said care for an indefinite time into the future.

33. As a further result of the aforesaid, Plaintiff has been required and will be required in the future to expend and become liable for substantial sums of money for medicines, and medical treatment and care for herself and in particular, Plaintiff has incurred and is liable for the costs of the aforesaid sterilization procedures and hospitalization costs attending to the delivery of her child, Cory Jenkins, all of which would have been avoided if Plaintiff was timely made aware of the genetic abnormality of her child in time to abort said pregnancy.

In Count III almost all of the foregoing allegations are also present. Paragraphs 40–42 of Count III are identical to paragraphs 28–30 in Count I (quoted above). Paragraphs 43–45 of Count III are substantially the same as paragraphs 31–33 (quoted above).

In the order that is the subject of this appeal, the trial court dismissed paragraphs 31–33 of count I and paragraphs 43–45 of count III because in those paragraphs of each count appellant sought damages for what the court characterized as the "wrongful birth" of appellant's child. The trial court found no right to recover for "wrongful birth" under Pennsylvania law. Since the separate counts of appellant's complaint are overlapping and redundant, the court obviously concluded that the only manner in which it could dismiss the portion of appellant's case that sought recovery for wrongful birth was to excise particular paragraphs. Thus, the court ordered that the paragraphs in which appellant sought to recover for the costs and expenses of having and raising her child be stricken.

Appellant argues that this order is final under the appealability doctrine enunciated in *Praisner, supra.* Appellant argues that in dismissing these six paragraphs of the complaint, the trial court deprived appellant of the right to litigate a separate cause of action and that, under *Praisner,* an immediate appeal must lie from this dismissal. Appellees argue that since each of the counts at issue are overlapping, neither one clearly stating a separate cause of action but rather both containing the same allegations of wrongdoing and loss, there should be no appeal from the dismissal of certain paragraphs of each of those counts.

I see no need to enter into the difficult inquiry of how *Praisner* should properly be applied to the facts of this case. I have opined on the viability of *Praisner* at some length in my dissenting opinion in *Trackers Raceway, Inc. v. Comstock,* 400 Pa.Super. 432, 583 A.2d 1193 (1990) (en banc), which was argued as a companion to this case because it too presented a question of the appealability of an order dismissing fewer than all of the claims for relief

against a particular defendant in a multi-count complaint. In *Trackers*, I concluded that the test for appealability announced in *Praisner*, which held that a partial dismissal order was final and appealable if it put the litigant out of court on a separate cause of action, was unworkable and had no firm basis in established finality principles or reason. Thus I concluded that the *Praisner* doctrine should no longer be applied and that orders dismissing fewer than all claims for relief against a particular defendant in a multi-count complaint are interlocutory and not immediately appealable as of right.[2]

Applying this conclusion to this case, the disposition becomes clear. Appellant is still in court as to all three defendants. In fact, appellant retains the right to litigate each and every one of her allegations of wrongdoing as to each defendant. Since the order appealed from did not put appellant out of court as to all claims for relief against any particular defendant, I would hold that the appeal must be quashed.

---

**2.** I need not reiterate the analysis that led me to the conclusion that *Praisner* should be overruled. Rather, I incorporate that analysis herein by reference to my dissenting opinion in *Trackers*.