616 A.2d 700

**Tina M. BIANCHINI and Michael Bianchini, Appellants,**

**v.**

**N.K.D.S. ASSOCIATES LTD. and Eugene A. Dragonosky M.D. and Stanley Sliwinski M.D. and Bucks County Womens Diagnostic Center and Roy Prager M.D., Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 2, 1992.

Filed Nov. 16, 1992.

Mary E. Nepps, Philadelphia, for appellants.

Carolyn B. Di Giovanni, Plymouth Meeting, for N.K.D.S. Associates, Dragonosky, M.D. and Sliwinski, M.D., appellees.

Christine M.M. Brenner, Philadelphia, for Bucks County Womens Diagnostic Center, appellee.

Before CIRILLO, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge:

This case involves an appeal from the March 17, 1992, order sustaining the preliminary objections in the nature of a demurrer against the plaintiffs/appellants, Tina M. Bianchini and Michael Bianchini. We affirm.

█ The standard utilized in reviewing the propriety of decisions sustaining preliminary objections in the nature of a demurrer is well-established; to-wit:

> It is axiomatic in the law of pleading that preliminary objections in the nature of a demurrer admit as true all well and clearly pleaded material, factual averments and all inferences fairly deducible therefrom. Conclusions of law and *unjustified inferences are not admitted by the pleading.* Starting from this point of reference the complaint must be examined to determine whether it sets forth a cause of action which, if proved, would entitle the party to the relief sought. If such is the case, the demurrer may not be sustained. On the other hand, where the complaint fails to set forth a cause of action, a preliminary objection in the nature of a demurrer is properly sustained.

*Greenspan v. United Services Automobile Association,* 324 Pa.Super. 315, 471 A.2d 856, 858 (1984) (Citations omitted; emphasis added).

In compliance with the preceding, we observe that the appellants filed a 5–count complaint alleging negligence on the part of the defendants [1] in failing to perform and/or refer the appellant Tina Bianchini for evaluation, testing, diagnosis, care and/or treatment (with regard to a Level II ultrasound), the result of which "necessitat[ed] the carrying and delivery of a child who was trisomic, monosomic, physically impaired, mentally retarded and certain to die." Paragraph 14. As a consequence thereof, as asserted by the appellants:

> 14. By the time Tina Binachini's Level II ultrasound was performed, she was at 26 weeks gestation....

1. The defendants consist of N.K.D.S. Associates, Ltd. (a professional corp.), Drs. Eugene Dragonosky and Stanley Sliwinski, both of whom are licensed obstetricians and gynecologists, Bucks County Womens Diagnostic Center and Dr. Roy Prager, a radiologist.

15. On March 30, 1990, after three days of intense labor, plaintiff, Tina Bianchini delivered Amanda Bianchini, a child with multiple fetal abnormalities and deficiencies. Thereafter, on March 31, 1991, [*sic*] at 4:15 p.m., Amanda Bianchini died.

16. Defendants negligently and carelessly failed to evaluate, test, diagnose, care and treat the plaintiff and/or negligently and carelessly failed to timely perform and/or refer the plaintiff, Tina Bianchini, for evaluation, testing, diagnosis, care and/or treatment thereby causing the plaintiff to undergo added and unnecessary treatment, physical and mental pain, suffering and distress.

17. As a result of the defendants' negligence, plaintiff was caused to undergo and experience the physical and emotional trauma of the carrying, labor, delivery, birth, and death of her severely deformed child. Plaintiff has required added treatments in connection with the labor, delivery and birth of her child. She has suffered psychiatric difficulties and required a hospitalization for the same due to her physical injuries. She is likely to continue to suffer from emotional problems as a result of this experience in the future. She has incurred expenses in connection with the delivery, birth and death of her daughter, and for her own treatment. She is likely to continue to incur medical expenses in the future. She has been deprived and may continue to be deprived of attending to her usual occupation and daily duties. She has been and is likely to continue to be deprived of the pleasures of life.

18. Michael Bianchini is the husband of the plaintiff, Tina Bianchini and the father of Amanda Bianchini. As a result of the defendants' negligence, plaintiff, Michael Bianchini has been and may continue to be deprived of the comfort, society, and services of his wife. He has incurred expenses in connection with the labor, delivery, and birth of his wife and child and may continue to incur expenses in the future. He has been caused to suffer emotional distress, inconvenience, and financial losses connected with these events.

The aforementioned allegations appear in paragraphs of the complaint immediately preceding the listing of the 5–counts. Each count assigned negligence and carelessness in the defendants' diagnosis, evaluation, testing, care and treatment of the appellant Tina Bianchini: in particular, the defendants' failure to perform timely Level I and Level II ultrasound tests caused the appellant Tina Bianchini harm, i.e., "necessitating the carrying and delivery of a child who was trisomic, monosomic, physically impaired, mentally retarded and certain to die," as well as other injuries *originating* therefrom.

The defendants filed preliminary objections in the nature of a demurrer urging that paragraphs 17 and 18 be stricken as violative of 42 Pa.C.S.A. § 8305's [2] prohibition against recovery of damages based on the birth of a child. The appellants filed a response denying the bar of Section 8305 and challenging its constitutionality.[3] Paragraph 10. In a memorandum in support of the appellants' response to the defendants' preliminary objections, it was asserted at pages 3–4 that:

> ... on February 20, 1990, ... [a] Level II ultrasound [was performed on the appellant Tina Bianchini and] found severe chromosomal abnormality.... The fetus was trisomic, monosomic, and physically and mentally impaired such that the fetus would never survive birth.

By the time of the Level II ultrasound, however, Mrs. Bianchini was twenty-six weeks gestation, *beyond the time for abortion.*[4] She was doomed to carry and deliver a fetus so deformed that it would not survive. On March 30, 1990, after three days of intense labor, Mr[s.] Bianchini delivered

---

**2.** Section 8305 reads in relevant part:
(a) Wrongful birth.—There shall be no cause of action or award of damages on behalf of any person based on a claim that, but for an act or omission of the defendant, a person once conceived would not or should not have been born.
Act of April 13, 1988, P.L. 336, No. 47, § 2, 42 Pa.C.S.A. § 8305(a) (Supp.1992).

**3.** Notice of assailing the constitutionality of Section 8305 was forwarded to the Attorney General of Pennsylvania. See Record 13.

**4.** Physicians are prohibited by 18 Pa.C.S.A. § 3211(a) from performing abortions on fetuses with a gestational age over twenty-four weeks.

a female child with multiple fetal abnormalities and deficiencies. As expected, the child did not survive.

[Appellants] alleged that defendants negligently failed to perform timely testing and evaluation, causing Mrs. Bianchini to suffer added and unnecessary treatment, pain and suffering. *Defendants' collective negligence caused Mrs. Bianchini to suffer the trauma of carrying and delivering a fetus certain to die of its severe deformities.*[5] In addition to the three days of painful labor and delivery, plaintiff suffered and continues to suffer emotional problems from this experience. [Citations omitted; emphasis added]

Further on in the Memorandum of Law, the appellants contended that Section 8305 did not bar their claim because:

Their child was neither healthy nor unplanned. To the contrary, their child would never survive birth. Thus, theirs is not a claim that the child should not have been born. Their claim is that the defendants' [*sic*] negligently deprived them of important medical information regarding the pregnancy.[6] The result forced Mrs. Bianchini to carry a fetus she knew was doomed to die, to endure three months [*sic*] of painful, intense labor, to deliver the child and then to watch it die outside the womb.

The legislature never intended to shield doctors from their negligence in these circumstances. *The Bianchinis were entitled to timely, accurate medical advise so that they could make an informed claim whether to spare Mrs. Bianchini the trauma and pain of carrying and delivering a fetus that could not survive.* The Wrongful Birth Statute does not bar claims for negligent medical advice regarding a medical condition.

※　※　※　※　※　※

5. Implicit in this statement is the likelihood that, had Mrs. Bianchini been diagnosed early-on in her pregnancy as carrying a deformed child, she would have opted not to suffer the trauma of carrying and delivering a fetus certain to die of its severe deformities, i.e., performance of an abortion.

6. One can infer from such a statement and the one succeeding it that the appellants would have terminated the pregnancy.

The Bianchinis ... had a fundamental, constitutional right to medical advice regarding the pregnancy and the viability of the fetus, *in order to make an informed decision regarding abortion*.[7] [Emphasis added]

In an opinion and order granting the defendants' preliminary objections, the court wrote that the plaintiffs' assertion that the defendants were negligent in failing to perform timely tests which would have availed them the opportunity "to end the pregnancy and avoid either an unwanted childbirth, or the birth of a severely handicapped child" was prohibited by Section 8305(a). This appeal followed.

■■ Initially, we need to determine the appealability of the order. Although the court, in dismissing *solely* paragraphs 17 and 18 of the appellants' complaint,[8] did not discuss any of the 5–counts of the complaint or explicitly dispose of the entire action, the order effectively terminated the proceedings in that it precluded the appellants from presenting the merits of their claims regarding the negligent diagnosis of and/or testing for a deformed fetus. See *Marino Estate*, 440 Pa. 492, 269 A.2d

7. The appellants' constitutional challenge to Section 8305 is on two levels: The first claims a fundamental, constitutional right to an abortion under *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and that the medical advise withheld creates a cause of action for negligent conduct under *Speck v. Finegold*, 497 Pa. 77, 439 A.2d 110, 114 (1981).

The second tier assaults the statute on the ground that it bears no rational relation to any state interest—birth over abortion. See, e.g., *Hatter v. Landsberg*, 386 Pa.Super. 438, 563 A.2d 146, 150 (1989). Thus, under *Speck*, supra, the appellants aver that Section 8305 is unconstitutional as violative of their rights to equal protection under the law.

We hold that the constitutional challenge of the appellants has been answered against their interest in *Jenkins v. Hospital of Medical College*, 401 Pa.Super. 604, 585 A.2d 1091 (1991) (en banc) and *Edmonds v. Western Pennsylvania Hospital Radiology Associates*, 414 Pa.Super. 567, 607 A.2d 1083 (1992).

8. Paragraphs 17 and 18 appear in the introductory portion of the complaint where prefatory remarks identifying the respective defendants and alleged negligence of each is recounted. Thereafter, with an incorporation of these introductory paragraphs, Counts I–V detail the conduct attributed to each defendant as the factual basis for the allegations of negligence leading to the appellant Tina Bianchini's assertions of damages.

645, 646 (1970); *Edmonds v. Western Pennsylvania Hospital Radiology Associates,* 414 Pa.Super. 567, 607 A.2d 1083, 1085 (1992); *Jenkins v. Hospital of Medical College,* 401 Pa.Super. 604, 585 A.2d 1091, 1094 (1991) (en banc).

Therefore, we will address whether the allegations set forth in paragraphs 17 and 18 constitute conduct proscribed by Section 8305. In doing so, we find *Butler v. Rolling Hill Hosp. (Butler I),* 382 Pa.Super. 330, 555 A.2d 205 (1989), allocatur denied, 522 Pa. 623, 564 A.2d 915 (1989), instructive.

 In *Butler I,* the doctor failed to order a pregnancy test, requested by the plaintiff, until 24 weeks into the pregnancy, a period beyond which the plaintiff could have a legal abortion. The plaintiff brought suit against the physician to recover for, *inter alia,* anxiety she experienced and continued to experience, past and future medical costs, pain and suffering and lost earnings. With the entry of a motion for summary judgment against the plaintiff/mother, an appeal was perfected questioning the dismissal of the cause of action against the doctor for failing to diagnose timely the malady afflicting the fetus. In denying the plaintiff's claim, we wrote:

> In the present case, appellant is seeking damages from Dr. Limberakis on the theory that but for Dr. Limberakis' failure to timely order a pregnancy test and diagnose appellant as being pregnant, appellant would have been able to legally abort the child and would have been able to avoid bearing an unplanned child. Section 8305 expressly provides that there is no cause of action "based on a claim that, but for an act ... of the defendant, a person once conceived would not or should not have been born ... [or] aborted." We conclude that § 8305 bars appellant's cause of action against Dr. Limberakis, and affirm the summary judgment.

382 Pa.Super. at 334–35, 555 A.2d at 207; *cf. Jenkins,* supra, 401 Pa.Super. at 626–28, 585 A.2d at 1102 (Because appellant's wrongful birth cause of action accrued prior to the passage of Section 8305(a), suit premised on the negligence of the health care provider to administer an amniocentesis procedure in sufficient time to terminate pregnancy was held to be viable;

*however, the court noted that if Section 8305(a) had applied to case, the medical malpractice suit would have been barred ).*

We find the assertions of the appellants in paragraphs 17 and 18 to be those of a suit for wrongful birth resulting from ("but for") a delayed performance of a medical procedure precluding an abortion. This type of suit is not condoned by Section 8305; to-wit:

... the intent of ... the wrongful life and wrongful birth legislation is ... to stop a court-engendered policy which views the birth of a child, be that child handicapped or otherwise, a damaging event for which someone should be punished in order to prevent this quality of life ethic from becoming so persuasive that a handicapped child is routinely considered better off dead and of less value than what we would call "a normal child" and to prevent the practice of medicine, especially obstetrics and gynecology, from becoming coerced into accepting eugenic abortion as a condition for avoiding what are particularly wrongful birth lawsuits.... As a matter of public policy, the failure to kill an unborn child, handicapped or normal, should never constitute a wrong....

\* \* \* \* \* \*

Our [Court] review[ed] ... the legislative history [of Section 8305(a) and found it to] indicate[ ] that the legislature primarily was concerned with eliminating suits brought by children or their parents in an effort to recover damages for the failure to abort a child or negligently aborting a child.

*Hatter v. Landsberg,* 386 Pa.Super. 438, 563 A.2d 146, 149 & 150 (1989), allocatur denied, 525 Pa. 626, 578 A.2d 414 (1990).

The history of Section 8305(a) suggests that the suit brought by the appellants is precisely the type opposed by the Legislature. *Id.; Jenkins,* supra.

Our appellate courts have been willing to recognize a cause of action for improperly performed contraceptive procedures and damages (e.g., medical expenses, lost wages related to prenatal care, delivery, and post-natal care, as well as compen-

sation for pain and suffering incurred during the pre-natal through postnatal periods) flowing therefrom, save for the claim for future financial expenses in rearing unwanted children. See *Jenkins,* supra; *Butler v. Rolling Hill Hosp. (Butler II),* 400 Pa.Super. 141, 582 A.2d 1384 (1990); *Hatter,* supra.

However, it is apparent to this Court from a reading of the entire complaint and the pleadings in response thereto, as well as the memoranda in support thereof, that paragraphs 17 and 18 (complaining of medical negligence impairing the aborting of a fetus and the damages requested) are "based on a claim that, but for an act ... of the defendant[s], a person once conceived would not or should not have been born ... [or] aborted." Such a cause of action is proscribed by Section 8305(a). See *Butler (II),* supra, 400 Pa.Super. at 145-46, 582 A.2d at 1386, interpreting *Butler (I),* supra.

Further, the appellants have requested the same type of relief (money damages) for a single alleged harm which pervades all counts in the complaint, i.e., the defendants' failure to schedule timely and/or perform a Level II ultrasound test and communicate the results in order for the Bianchinis to make an informed decision whether to abort. See Counts I, II, III, IV and V, as well as the subparagraphs contained therein. See, e.g., *Jenkins,* supra, 401 Pa.Super. at 612–14, 585 A.2d at 1095. Such allegations, premised as they are upon assertions that "but for" the improper acts of another a child would not have been born, do not constitute a wrong which this Commonwealth is willing to recognize as the basis for a medical malpractice suit. See *Edmonds,* supra, 414 Pa.Super. at 577 n. 6, 607 A.2d at 1088 n. 6.

Accordingly, in light of Section 8305(a) and the case law interpreting it, we find the order of the court to have been entered properly.

Order affirmed.