Natalie CATLIN, Appellant

v.

Marc HAMBURG, M.D., Appellee.

Superior Court of Pennsylvania.

Argued June 28, 2012.
Filed Oct. 26, 2012.
Reargument Denied Dec. 28, 2012.

Christopher S. Hallock, Pittsburgh, for appellant.

Jamie L. Lenzi, Pittsburgh, for appellee.

BEFORE: OLSON, WECHT and PLATT,* JJ.

OPINION BY OLSON, J.:

Appellant, Natalie Catlin, appeals from the order entered on August 9, 2011, granting a motion for summary judgment

* Retired Senior Judge assigned to the Superior Court.

filed on behalf of Appellee, Marc Hamburg, M.D. (Dr. Hamburg). After careful consideration, we vacate the order and remand for additional proceedings.

We summarize the facts and procedural history of this case as follows. Appellant gave birth to her second child at Saint Francis Hospital in New Castle, Pennsylvania on March 23, 1999. Dr. Hamburg delivered the child. Following the delivery, Appellant suffered from postpartum hemorrhaging and uterine atony, medically described as the failure of the uterus to contract after delivery. Thereafter, following medical consultation, Appellant decided to undergo postpartum sterilization on March 24, 1999. Dr. Hamburg conducted a surgical procedure wherein he utilized "Filshie" clips to occlude, or close off, Appellant's fallopian tubes. During surgery, Dr. Hamburg noticed that the Filshie clip on Appellant's right fallopian tube slid. Accordingly, he performed another precautionary procedure, called the modified Pomeroy procedure whereby he excised and removed a portion of Appellant's right fallopian tube. He did not perform the modified Pomeroy procedure on the left fallopian tube.

In February 2000, Appellant consulted Dr. Hamburg about abdominal pain and light menstrual periods. After examination, Dr. Hamburg opined that Appellant was not pregnant and referred her to her primary physician. In May 2000, Appellant's primary physician determined Appellant was 19½ weeks pregnant and that the fetus had congenital abnormalities. Appellant opted to terminate the pregnancy in June 2000. Following the termination procedure, Appellant experienced heavy bleeding, anemia, and received several blood transfusions before the hospital discharged her. Appellant continued to have excessive bleeding and, after exhausting other conservative medical treatments, underwent a total hysterectomy in May 2001.

On March 1, 2001, Appellant filed a civil suit against Dr. Hamburg, and the hospital, alleging negligence in performing the sterilization procedure. In support of her claims of medical malpractice, Appellant filed an expert report authored by Bruce L. Halbridge, M.D. (Dr. Halbridge) opining that Dr. Hamburg breached the standard of care. Dr. Halbridge report, 2/14/2009. More specifically, Dr. Halbridge stated:

> The standard of care requires that when a surgical technique is seen to fail during a surgery, or when a more secure technique is available to accomplish the same goal, then the surgeon should perform the more secure and safer surgical procedure.

*Id.* at 5. Because Dr. Hamburg recognized during the sterilization procedure that the Filshie clip on the right fallopian tube had slipped and opted to perform a modified Pomeroy procedure, Dr. Halbridge concluded that Dr. Hamburg should have performed the same precautionary procedure on the left fallopian tube. *Id.* Failure to do so, according to Dr. Halbridge, was a breach of the standard of care.

On February 24, 2011, Dr. Hamburg filed motions *in limine* to strike Dr. Halbridge's expert opinion, and to limit Appellant's claim for damages for emotional distress to a discrete postnatal period. With respect to the motion seeking to strike Dr. Halbridge's opinion, Dr. Hamburg argued that Dr. Halbridge had no medical or scientific basis for believing that the Filshie clip on the left tube failed or that the ovum was fertilized from the left tube. Thus, Dr. Hamburg argued that Dr. Halbridge's expert opinion was based on mere supposition, lacked foundation and "can only be considered speculative." Motions *in Limine*, 2/24/2011, p. 2. As for the motion

seeking to limit Appellant's claim for damages, Dr. Hamburg argued *inter alia* that, pursuant to Pennsylvania law, Appellant was only entitled to recover damages for pain and suffering incurred during the prenatal through postnatal period. *Id.* at 4. Following argument, the trial court, by an Opinion and Order entered July 21, 2011, denied Dr. Hamburg's motions *in limine*.

On July 28, 2011, Appellant deposed the doctor who performed Appellant's hysterectomy, Dr. Halina Zyczynski (Dr. Zyczynski), and specifically questioned her regarding her post-operative report. Dr. Zyczynski testified that in removing Appellant's uterus, she discovered a Filshie clip free floating in the surgical field and she excised the other Filshie clip still attached to a fallopian tube. Moreover, Dr. Zyczynski testified that hospital staff manipulated the uterus after it was removed from Appellant and there was no way of knowing whether the attached clip was on the right or the left fallopian tube. Thus, she could not tell which clip was attached and which clip was free floating.

Following receipt of Dr. Zyczynski's post-operative report, Dr. Halbridge prepared a supplemental expert report. In his supplemental report, Dr. Halbridge noted Dr. Zyczynski's findings that one clip was free floating and the other clip was "easily excised" from the fallopian tube. Dr. Halbridge's report, 7/3/2011, p. 1. Dr. Halbridge stated that "[a] securely fastened Filshie clip that completely occluded the fallopian tube ... would not be so easily removed" as it would be "deeply embedded in the fallopian tube and covered with fibrotic, scar like tissue" after two years in place. *Id.* Based on this information, Dr. Halbridge stated that he "continue[s] to recognize that neither fallopian tube was occluded by the Filshie clips utilized by Dr. Hamburg." *Id.* at 2. His

supplemental expert opinion concluded by stating:

> Seeing the failure of the Filshie [c]lip on the right fallopian tube, Dr. Hamburg should have also recognized that the clip would very likely fail on the left tube since both tubes were nearly identical. The standard of care is to abandon a surgical procedure when it is seen to fail during a surgery and employ a more secure procedure to accomplish the goal. In this case Dr. Hamburg should have performed a Pomeroy tubal ligation on the left fallopian tube also in order to ensure sterilization.

*Id.*

On the day of trial, counsel for Dr. Hamburg asked the trial court to reconsider its rulings on his motions *in limine*. The trial court reconsidered Dr. Hamburg's motions *in limine* and granted relief.

As for Dr. Hamburg's request that Appellant's expert opinion be stricken, the trial court determined upon reconsideration that Dr. Zyczynski's testimony showed that she did not know the position of the Filshie clips (*i.e.* which clip was attached and which clip was free floating) and, therefore, the facts of the case were speculative. Because Dr. Halbridge's opinion relied upon Dr. Zyczynski's testimony, the trial court struck Dr. Halbridge's report as speculative thereby precluding his testimony at trial. Moreover, the trial court concluded that there was no medical literature to support Dr. Halbridge's opinion that Dr. Hamburg breached the standard of care by not performing a modified Pomeroy procedure on Appellant's left fallopian tube.

With regard to damages, the trial court relied upon *Mason v. Western Pennsylvania Hospital*, 499 Pa. 484, 453 A.2d 974 (1982), and its progeny, and determined, that if Appellant sustained her burden of

proof, she was entitled to recover all medical expenses, lost wages, and pain and suffering incurred during the prenatal through postnatal periods. The trial court recalled that during an *in camera* discussion prior to trial, Appellant agreed that the postnatal care period was limited to six weeks. Thus, the trial court granted Dr. Hamburg's motion *in limine* to limit future damages to that period.

Finally, because the trial court struck the testimony of Appellant's only expert witness, it determined that Appellant could not prove breach of duty or causation to support her negligence claims. Accordingly, the trial court granted Dr. Hamburg's motion for summary judgment and dismissed Appellant's complaint. This timely appeal followed.[1]

On appeal, Appellant presents two issues for our review:

1. Did the trial court commit an error of law when it granted the [m]otion for [s]ummary [j]udgment?

2. Did the trial court commit an error of law when it limited Appellant from offering proof of damages for emotional distress to the prenatal, delivery, and postnatal period, and by limiting "postnatal" to a six (6) week term?

Appellant's Brief at 4.

In her first issue presented, Appellant argues that the trial court erred by striking Dr. Halbridge's expert opinion and precluding him from providing expert testimony at trial. *Id.* at 12–16. She asserts that Dr. Hamburg did not present any additional expert opinions after Dr. Zyczynski's deposition testimony and post-operative report became part of the record

and, therefore, the trial court erred in revisiting its prior decision to permit Appellant's expert opinion to be introduced at trial. *Id.* at 13. In support, Appellant cites the trial court's own opinion dated July 20, 2011 denying Dr. Hamburg's motion to exclude the expert opinion offered by Dr. Halbridge. *Id.* at 14. Initially, Appellant points out that in its previous decision the trial court determined that Dr. Halbridge expressed his opinion with a reasonable degree of medical certainty and "[t]he fact that the pregnancy could have resulted in a different way [did] not render Dr. Halbridge's opinion inadmissible." *Id.* at 15. Moreover, according to Appellant, Dr. Halbridge asserted in his report that Dr. Hamburg's failure to perform a modified Pomeroy procedure on the left fallopian tube increased Appellant's risk of pregnancy. *Id.* Dr. Halbridge explained that because both fallopian tubes were of the same diameter, if one Filshie clip slipped and required another precautionary procedure, the same modified Pomeroy procedure was required on the other fallopian tube to assure occlusion. *Id.* Finally, Appellant argues that the trial court erred in determining Dr. Halbridge's opinion hinged solely on the deposition testimony of Dr. Zyczynski. *Id.* at 16.

■ Because the trial court ultimately granted summary judgment after excluding Dr. Halbridge's testimony, we consider the propriety of the trial court's ruling under the principles governing the entry of summary judgment:

In reviewing an order granting summary judgment, our scope of review is plenary, and our standard of review is

---

1. The trial court granted summary judgment on August 9, 2011. Appellant filed a timely notice of appeal on September 7, 2011. On September 15, 2011, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa. R.A.P. 1925(b). Appellant complied timely. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on November 7, 2011.

the same as that applied by the trial court. Our Supreme Court has stated the applicable standard of review as follows: [A]n appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo*.

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Harris v. NGK N. Am., Inc.*, 19 A.3d 1053, 1063 (Pa.Super.2011) (internal citation omitted).

We begin our analysis by considering whether the trial court correctly excluded the opinion and testimony of Dr. Halbridge. When we review a ruling on the admission or exclusion of evidence, including the testimony of an expert witness, our standard is well established.

These matters are within the sound discretion of the trial court, and we may reverse only upon a showing of abuse of discretion or error of law. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but re-

quires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. In addition, to constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

\* \* \*

To prevail in any negligence action, the plaintiff must establish the following elements: the defendant owed him or her a duty, the defendant breached the duty, the plaintiff suffered actual harm, and a causal relationship existed between the breach of duty and the harm. When the alleged negligence is rooted in professional malpractice, the determination of whether there was a breach of duty comprises two steps: first, a determination of the relevant standard of care, and second, a determination of whether the defendant's conduct met that standard. Furthermore, to establish the causation element in a professional malpractice action, the plaintiff must show that the defendant's failure to exercise the proper standard of care caused the plaintiff's injury. Expert testimony is generally required in a medical malpractice action to establish several of elements: the proper standard of care, the defendant's failure to exercise that standard of care, and the causal relationship between the failure to exercise the standard of care and the plaintiff's injury.

*Freed v. Geisinger Med. Ctr.*, 910 A.2d 68, 72–73 (Pa.Super.2006) (citations, quotations and brackets omitted).

Here, the trial court determined upon reconsideration that Dr. Halbridge's opinion was purely speculative. Trial Court Opinion, 11/7/2011, at 2–3. The trial court began its analysis by crediting Dr. Hamburg's argument that "there is no

medical literature to support Dr. Ha[l]bridge's opinion that Dr. Hamburg breached the standard of care with regard to his not performing a modified Pomeroy on the left fallopian tube." *Id.* at 2. Contrary to the trial court's conclusion, however, an expert witness need not cite to medical literature or medical treatises to support his opinion. *See Joyce v. Boulevard Physical Therapy & Rehabilitation Center, P.C.,* 694 A.2d 648, 656 (Pa.Super.1997), *citing Collins v. Hand,* 431 Pa. 378, 246 A.2d 398 (1968) (Years of experience in a medical field is sufficient to support an articulation of the relevant standard of care; the standard of care in medical malpractice actions is first and foremost what is reasonable under the circumstances); *see also Smith v. Grab,* 705 A.2d 894, 900 (Pa.Super.1997) ("[F]ailure to cite an article or text on point goes to the weight of [an expert's] testimony, not its admissibility."). Here, Dr. Halbridge has been board certified in obstetrics and gynecology since 1978. His failure to cite any medical literature or treatise does not render his opinion inadmissible. Thus, the trial court erred in striking Appellant's expert on this basis.

Moreover, upon further review of the proffered expert reports, Dr. Halbridge specifies that he is rendering his opinion within a reasonable degree of medical certainty. He starts by recognizing that Dr. Hamburg noted that both of Appellant's fallopian tubes were nearly identical in size. Because the Filshie clip slipped from the right fallopian tube during the sterilization procedure and Dr. Hamburg felt it necessary to take additional precautions with another procedure, Dr. Halbridge opines that Dr. Hamburg was required to perform that same procedure on the left fallopian tube. Dr. Zyczynski's deposition testimony that she could not specify the positions of the Filshie clips when she performed the hysterectomy does not

change that opinion. Moreover, Dr. Halbridge also acknowledges that neither Filshie clips nor the Pomeroy procedure provides guaranteed sterilization.

■ We have previously determined:

[T]o make an admissible statement on causation, an expert need not testify with absolute certainty or rule out all possible causes of a condition. Expert testimony is admissible when, taken in its entirety, it expresses reasonable certainty that the accident was a substantial factor in bringing about the injury. The expert need not express his opinion in precisely the same language we use to enunciate the legal standard. That an expert may, at some point during his testimony, qualify his assertion does not necessarily render his opinion inadmissibly speculative.

*Hreha v. Benscoter,* 381 Pa.Super. 556, 554 A.2d 525, 527 (1989) (citations and emphasis omitted).

■ Based upon all of the foregoing, we conclude that the trial court erred in striking Appellant's expert on the basis that his opinion was speculative. Dr. Halbridge expressed his opinion that Dr. Hamburg deviated from the standard of care within a reasonable degree of medical certainty. It matters not whether Dr. Zyczynski was able to determine, following Appellant's hysterectomy, whether the Filshie clip was attached to the left or the right fallopian tube. Dr. Halbridge opines that Appellant's pregnancy was caused by the failure to perform a precautionary surgical procedure. Although he acknowledges that there is a chance that pregnancy was possible despite all sterilization methods, Dr. Halbridge was not required to rule out all conceivable causes. Any qualification goes to the weight of Dr. Halbridge's opinion, not its admissibility. Thus, we believe that the trial court erred

as a matter of law in precluding Appellant's expert from testifying at trial. In view of our conclusion that Dr. Halbridge's expert testimony is admissible, we further conclude that Appellant has raised a genuine issue of material fact as to her medical malpractice claims and that the trial court's basis for granting summary judgment was improper.

Because we remand this case for further proceedings, we turn now to Appellant's second claim that focuses upon the trial court's order limiting damages. Appellant contends that the trial court erred in limiting damages for emotional distress to a six-week postnatal period. Appellant's Brief at 17–22. Specifically, Appellant contends that the trial court erred by relying on the Pennsylvania Supreme Court's decision in *Mason v. Western Pennsylvania Hospital*, 499 Pa. 484, 453 A.2d 974 (1982), and its progeny, in limiting her claim for emotional distress to the postnatal period. *Id.* at 17. More specifically, Appellant argues that *Mason*, and this Court's subsequent decision in *Butler v. Rolling Hill*, 400 Pa.Super. 141, 582 A.2d 1384 (1990), dealt with negligently performed sterilization procedures that resulted in the birth of healthy children. *Id.* at 21. Appellant argues that our Court in *Butler* applied the "benefit rule" and determined that the emotional distress of giving birth to an unwanted child is "set-off" by the benefits derived from raising the child, thus limiting damages to prenatal, delivery and postnatal periods. *Id.* at 20–21. Appellant asserts that she was "not able to carry her child to term or deliver it[,]" opted to terminate the pregnancy and her "recovery involved subsequent invasive procedures[.]" *Id.* at 21. Thus, she contends that it was error for the trial court to limit her claim for damages to the prenatal and postnatal periods, and this case should be treated like any other medical malpractice claim where the

issue of damages is left to the jury. *Id.* at 22. Appellant also argues that, if her damages are to be limited to the postnatal period, the trial court erred by adopting Dr. Hamburg's position that the term "postnatal period" is limited to six weeks. *Id.* at 18. Moreover, Appellant argues that the trial court "offered a different rationale for its ruling" in its Rule 1925(a) opinion based "upon a recollection that the parties stipulated to such a [six-week period] limitation" during an *in camera* discussion. *Id.* at 18–19. Appellant argues she did not stipulate to such an understanding.

■■■■ Generally, a trial court's decision to grant or deny a motion *in limine* is subject to an evidentiary abuse of discretion standard of review. The term discretion imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Reese*, 31 A.3d 708, 715–716 (Pa.Super.2011) (citations and quotations omitted).

In this case, the trial court, citing 42 Pa.C.S.A. § 8305(a), concluded that Appellant was entitled to recover damages in connection with the termination of the pregnancy. Trial Court Opinion, 7/21/2011, at 7. However, the trial court limited the amount to "all medical expenses and lost wages related to prenatal

care, delivery, and postnatal care, as well as compensation for pain and suffering incurred during the prenatal through postnatal periods." *Id., citing Hatter v. Landsberg*, 386 Pa.Super. 438, 563 A.2d 146, 150 (1989). Moreover, in a later opinion, the trial court noted:

> [D]uring the *in camera* discussion on August 9, 2011, the [c]ourt recalls that [the parties] agreed that the post-natal period lasted six weeks. Therefore, Appellant[ ] could only recover damages for harm she incurred during that six-week period.

Trial Court Opinion, 11/7/2011, at 3. As such, the trial court limited damages for "pain and suffering to the six-week period after the termination of the pregnancy." *Id.* at 4.

Because we believe that the trial court erroneously relied upon *Mason*, *Butler* and *Hatter, supra*, we begin with a brief summary of those cases. In *Mason*, Jacqueline Mason filed suit against Western Pennsylvania Hospital (West Penn) alleging improper performance of a sterilization operation. *Mason*, at 975. Mason underwent a bilateral tubal ligation at West Penn. She subsequently became pregnant and ultimately gave birth to a healthy child by caesarean section. *Id.* In the suit against West Penn, Mason argued that, in addition to medical expenses and lost wages, she was entitled "to recover alleged damages for emotional distress and the expenses of raising the child until the 'age of maturity.'" *Id.* at 976. Our Supreme Court rejected that notion as against public policy and held that in light of "the paramount importance of family to society, ... the benefits of joy, companionship, and affection which a normal, healthy child can provide must be deemed as a matter of law to outweigh the costs of raising that child." *Id.* Thus, the Court concluded, "the financial and emotional costs of raising a

healthy child are not compensable." *Id.* Ultimately, however, our Supreme Court found that "if [Mason] sustains her burden of proof, she is entitled to recover ... compensation for pain and suffering incurred during the pre-natal through postnatal periods." *Id.*

Both *Hatter* and *Butler* dealt with facts almost identical to *Mason* wherein the plaintiffs delivered babies, but claimed they were the result of negligent sterilization procedures. In *Hatter* and *Butler*, however, this Court had the additional task of interpreting 42 Pa.C.S.A. § 8305, legislation enacted after the *Mason* decision. Section 8305 provides, in pertinent part:

> **(a) Wrongful birth.**—There shall be no cause of action or award of damages on behalf of any person based on a claim that, but for an act or omission of the defendant, a person once conceived would not or should not have been born. Nothing contained in this subsection shall be construed to prohibit any cause of action or award of damages for the wrongful death of a woman, or on account of physical injury suffered by a woman or a child, as a result of an attempted abortion.

> \*       \*       \*

> **(b) Wrongful life.**—There shall be no cause of action on behalf of any person based on a claim of that person that, but for an act or omission of the defendant, the person would not have been conceived or, once conceived, would or should have been aborted.

> **(c) Conception.**—A person shall be deemed to be conceived at the moment of fertilization.

42 Pa.C.S.A. § 8305. This Court determined that the statute "precludes only an action by a child or his representative for the child's own wrongful life resulting from

a negligently performed contraceptive procedure or abortion." *Hatter* at 148. Moreover, after examining the statutory history of Section 8305, we noted the "legislation was not intended to bar cases of 'wrongful conception' resulting from negligently performed sterilization." *Id.* at 150. Thus, our Court concluded, "8305(b) does not bar [an] action by [plaintiffs] for their **own** expenses and pain and suffering resulting from an improperly performed contraceptive procedure." *Id.* at 148 (emphasis in original); *see also Butler* at 1386. We further relied upon the Supreme Court's analysis in *Mason* to support our decisions. *Hatter* at 150–151; *Butler* at 1385.

Thereafter, "[o]ur appellate courts have been willing to recognize a cause of action for improperly performed contraceptive procedures and damages (e.g., medical expenses, lost wages related to prenatal care, delivery, and postnatal care, as well as compensation for pain and suffering incurred during the prenatal through postnatal periods) flowing therefrom, save for the claim for future financial expenses in rearing unwanted children." *Bianchini v. N.K.D.S. Associates, Ltd.*, 420 Pa.Super. 294, 616 A.2d 700, 705 (1992), *citing Jenkins v. Hospital of Medical College*, 401 Pa.Super. 604, 585 A.2d 1091, 1094 (1991) *(en banc); Butler v. Rolling Hill Hosp. (Butler II)*, 400 Pa.Super. 141, 582 A.2d 1384 (1990).

The facts of this case are readily distinguishable from *Mason* and its progeny. Although pregnancies occurred in all of the previously cited cases, as well as the case presently before us, despite prior sterilization and contraceptive procedures, all of the women in the previously cited cases carried infants to term and ultimately gave birth. Pennsylvania appellate courts determined that in such cases, only prenatal through postnatal pain and suffering was compensable because the benefits of raising a child outweigh an unwanted birth. In this case, however, Appellant opted to abort the fetus and, accordingly, there was no birth. Therefore, the public policy espoused in *Mason* that "the benefits of joy, companionship, and affection which a normal, healthy child can provide must be deemed as a matter of law to outweigh the costs of raising that child" is simply inapplicable. *Mason* at 976. Moreover, we note the *Mason* court specifically limited damages to "postnatal" pain and suffering; "postnatal" is defined as "occurring or being after **birth**." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 970 (11th ed.2008) (emphasis added). Again, there was no birth in this case. Based upon the foregoing, it was error for the trial court to equate a termination procedure with a birth and then limit damages to a six-week period following that procedure.[2]

▆▆▆▆ This case is more akin to traditional medical malpractice actions. "As a general proposition[,] victims indeed must be compensated for all that they lose and all that they suffer from the tort of another." *Casselli v. Powlen*, 937 A.2d 1137, 1139 (Pa.Super.2007) (citation omitted). In awarding damages for past or future

---

**2.** Even if it were legally proper to limit Appellant's damages to the postnatal period, there is no evidence to support the trial court's finding that a postnatal period is limited to six weeks or that Appellant stipulated to such an understanding. At argument, the trial court stated that it was confident that, after conducting research, it would "find evidence that post-natal is defined as a six-week period."

N.T., 8/9/2011, at 9. In its Rule 1925(a) opinion, the trial court does not support this assertion. Moreover, the certified record does not contain any documentary support for this concept and Dr. Hamburg does not point to any in his appellate brief. Further, the alleged stipulation between the parties does not appear of record. Thus, the six-week limitation appears arbitrary.

non-economic loss, a factfinder may consider, *inter alia*, the age of the plaintiff, the severity of his or her injuries, whether the injuries are temporary or permanent, the duration and nature of medical treatment, the duration and extent of physical pain and mental anguish on the part of the plaintiff, and the plaintiff's physical condition before the injuries. *Patton v. Worthington Associates, Inc.*, 43 A.3d 479, 494 (Pa.Super.2012); *see also* Pa.R.C.P. No. 223.3. In this case, should there be a determination that Dr. Hamburg's negligence was the proximate cause of Appellant's injuries, the factfinder must determine damages based upon the aforementioned factors. This is especially so herein where Appellant alleges that she underwent "subsequent invasive procedures, hospitalization to deal with excessive vaginal bleeding, and a hysterectomy." Appellant's Brief at 21.

Based upon all of the foregoing, we conclude that the trial court erred as a matter of law in precluding Appellant's expert from testifying at trial. Thus, the subsequent grant of summary judgment was improper. On damages, we find that the trial court further erred by limiting Appellant's claim for pain and suffering to a six-week postnatal period.

Order vacated. Case remanded to the trial court for additional proceedings consistent with this opinion. Jurisdiction relinquished.