J-A22034-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ROBERT M. MARSTELLER AND SHARON M. MARSTELLER, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| GREGORY A. HANKS, M.D., | |
| Appellee | No. 11 MDA 2015 |

Appeal from the Judgment Entered December 17, 2014
in the Court of Common Pleas of Cumberland County
Civil Division at No.: 2013-03432

BEFORE:  BOWES, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED SEPTEMBER 17, 2015**

Appellants, Robert M. Marsteller and Sharon M. Marsteller, appeal from the judgment entered in their medical malpractice action against Appellee, Gregory A. Hanks, M.D., after a jury found that he was not negligent in his treatment of Appellant, Robert M. Marsteller.[1]  Specifically, Appellants challenge the court's denial of their motion *in limine* that sought to preclude testimony regarding the two schools of thought doctrine as irrelevant, and the weight of the evidence supporting the verdict.  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Henceforth, when we refer to "Appellant" in the singular, it will be to Robert M. Marsteller.

We take the following facts from the trial court's March 23, 2015 opinion and our independent review of the record. On April 28, 2012, Appellant fractured his leg when he fell while rollerblading. (*See* N.T. Trial, 10/29/14, at 38-39, 41-42, 53). Appellant's leg was so unstable it was "floppy." (*Id.* at 42; N.T. Trial, 10/30/14, at 119). Appellee, an orthopedic surgeon, treated Appellant at Holy Spirit Hospital. (*See* N.T. Trial, 10/27/14, at 46; N.T. Trial, 10/29/14, at 53). There were multiple options for the treatment of Appellant's primary injury, a semicircular spiral fracture of his tibia. (*See* N.T. Trial, 10/27/14, at 50-51, 53). In an effort to avoid open surgery due to a high risk of complications, Appellee placed the leg "in a cast with closed reduction" to reduce the fracture and return the bone to "as close to normal as possible." (*Id.* at 52; *see id.* at 55, 60). Thereafter, the course of treatment included monitoring the casted leg via x-ray to determine if it was maintaining alignment, and continuing to heal properly. (*See id.* at 60, 62).

On June 22, 2012, physical therapist June Perry examined Appellant and determined that he had an apparent tibial rotation of fifteen degrees in the healing leg, with a baseline five degree rotation in the uninjured limb. (*See* N.T. Trial, 10/29/14, at 206, 209). Appellant sought a second orthopedist's opinion, which Appellee arranged for him at Hershey Medical Center. (*See id.* at 20). On June 27, 2012, Spencer Reid, M.D., determined that a CAT scan of the leg revealed a twenty to twenty-five degree external

rotation. (**See** Dr. Reid's Trial Deposition, 4/04/14, at 27, 41; N.T. Trial, 10/30/14, at 70). On July 5, 2012, following his consultation with Dr. Reid, Appellant elected to undergo a surgical option involving a Taylor Spatial Frame[2] to set the leg rotation, rather than continue with Appellee's course of treatment. (**See** N.T. Trial, 10/29/14, at 23, 197).

On June 14, 2013, Appellants filed a complaint against Appellee alleging medical malpractice in his treatment of Appellant's fracture. The parties filed multiple motions *in limine* prior to trial, including Appellants' motion to limit testimony about the two schools of thought doctrine, which the court denied on October 24, 2014. The case proceeded to a four-day jury trial.

At trial, Appellee stated that a textbook written by Appellants' expert, Gerald Hayken, M.D., asserts that five to twenty degrees of malrotation "is commonly what is accepted in the field[.]" (**Id.** at 166). Both Appellee and his expert, John Esterhai, M.D., opined that the x-ray taken immediately after the leg casting showed acceptable alignment, and that use of the x-ray was proper. (**See** N.T. Trial, 10/27/04, at 65; N.T. Trial, 10/30/14, at 45, 52, 105). In fact, Dr. Esterhai testified that "a considerable number of physicians having reviewed the x-rays taken postoperatively [would have]

_____

[2] A Taylor Spatial Frame is an external metal frame that is surgically affixed to the leg with screws that penetrate into the bone and are adjusted to correct rotation. (**See** N.T. Trial, 10/29/14, at 23-24).

decided to leave [Appellant] in the cast and not proceed with recasting at that point in time[.]" (N.T. Trial, 10/30/14, at 52). He stated further that, following that image, it would have been "foolish" for Appellee to have attempted to re-reduce the fracture. (*Id.* at 46). Dr. Esterhai examined the CAT scan images from Dr. Reid, and stated that the malrotation was not more than twenty degrees, but that even if Appellant's leg was malrotated between twenty and twenty-five degrees, surgery was not mandated because of its own risks of making him worse. (*See id.* at 69-70).

Dr. Hayken agreed that the post-reduction x-rays of Appellant showed good alignment. (*See* N.T. Trial, 10/29/14, at 156). He testified, however, that Appellee's choice in treatment did not detect the unacceptable malrotation and he did not "believe that you can adequately evaluate rotation on a plain x-ray[.]" (*Id.* at 114). Although Dr. Hayken opined that a CAT scan would be more accurate, he admitted that it only would be necessary to examine the leg when planning to operate on it. (*See id.* at 116, 125). He testified that, if he had treated Appellant, his course of action would have been to re-reduce the injury by operating on him under anesthesia because the risk of displacing the fracture would not have been great. (*See id.* at 149). He conceded, however, that there are multiple ways of treating tibial fractures to bring the healed bone as close to its pre-break condition as possible. (*See id.* at 162). Specifically, he acknowledged that, although Dr. Reid decided that Appellant required

surgery to further reduce the fracture, Appellee's choice of treatment was recognized and acceptable. (*See id.* at 148; *see also* Dr. Reid's Trial Deposition, 4/04/14, at 29).

During the charging conference, Appellants' counsel objected to the "two schools of thought" instruction, but then agreed that it was applicable to the care rendered by Appellee after the initial closed reduction. (*See* N.T. Trial, 10/31/14, at 5, 10, 12, 14-15). The trial court instructed the jury on two schools of thought, limiting it to the post-reduction treatment. (*See id.* at 32).

On October 31, 2014, the jury returned a verdict in which it found Appellee was not negligent. The court denied Appellants' motion for post-trial relief on December 5, 2014, and entered judgment on December 17, 2014. Appellants timely appealed.[3]

Appellants raise two questions for our review:

A. Did the trial court commit an error of law and/or abuse its discretion when it denied [Appellants'] [m]otion *in* [*l*]*imine* to [p]reclude any testimony as to [t]wo [s]chools of [t]hought with respect to the allegations of negligence in [their] [c]omplaint?

B. Did the trial court abuse its discretion when it denied [Appellants'] [p]ost-[t]rial [m]otion as to the weight of the evidence as being manifestly unreasonable, arbitrary, or capricious since both [Appellants'] and [Appellee's] experts agreed that permitting a malrotation in excess of [ten] degrees

_____

[3] Appellants filed a timely statement of errors complained of on appeal pursuant to the court's order on January 27, 2015. *See* Pa.R.A.P. 1925(b). The court filed an opinion on March 23, 2015. *See* Pa.R.A.P. 1925(a).

following a closed reduction was below the standard of care and it was undisputed that following the closed reduction, [Appellant] was left with a malrotation of at least [twenty] degrees?

(Appellants' Brief, at 5).

In their first issue, Appellants argue that the trial court erred in denying their motion *in limine* to preclude evidence referring to two schools of thought. (**See id.** at 5, 16-18). They maintain that evidence of two schools of thought was irrelevant[4] to their case because they "d[o] not dispute that [Appellee's] choice of a close[d] reduction was appropriate in this case." (**Id.** at 16-17). Appellants' claim lacks merit.

It is well-settled that:

Generally, a trial court's decision to grant or deny a motion *in limine* is

subject to an evidentiary abuse of discretion standard of review. The term discretion imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the

---

[4] We observe that "[e]vidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." **Smith v. Morrison**, 47 A.3d 131, 137 (Pa. Super. 2012), *appeal denied*, 57 A.3d 71 (Pa. 2012) (citation omitted).

action is a result of partiality, prejudice, bias or ill will.

*Catlin v. Hamburg*, 56 A.3d 914, 922 (Pa. Super. 2012), *appeal denied*, 74 A.3d 124 (Pa. 2013) (citation omitted).

> Where competent medical authority is divided, a physician will not be held responsible if in the exercise of his judgment he followed a course of treatment advocated by a considerable number of recognized and respected professionals in his given area of expertise.
>
> In recognizing this doctrine, we do not attempt to place a numerical certainty on what constitutes a "considerable number." The burden of proving that there are two schools of thought falls to the defendant. The burden, however, should not prove burdensome. The proper use of expert witnesses should supply the answers. Once the expert states the factual reasons to support his claim that there is a considerable number of professionals who agree with the treatment employed by the defendant, there is sufficient evidence to warrant an instruction to the jury on the two "schools of thought." It then becomes a question for the jury to determine whether they believe that there are two legitimate schools of thought such that the defendant should be insulated from liability.

*Gala v. Hamilton*, 715 A.2d 1108, 1110-11 (Pa. 1998) (citation omitted).

Here, in his expert report, Dr. Esterhai stated that there "is more than one school of thought" among physicians about whether, after the initial closed reduction, to treat a patient conservatively, as Appellee did herein, or pursue immediate surgical revision. (Expert Report, Dr. Esterhai, 8/09/14, at unnumbered page 5). Appellants' complaint alleged that, after the initial closed reduction, Appellee failed to: (1) detect an unacceptable degree of

malrotation; (2) both clinically and radiographically assess the rotation at the fracture site; (3) correct the allegedly unacceptable degree of malrotation within a reasonable time frame; and (4) correct the malrotation by May 31, 2012 while the malrotation was still correctable with minimal intervention. (*See* Complaint, 6/14/13, at 4 ¶ 23).

In other words, the complaint alleged Appellee's post-reduction treatment was negligent, and Dr. Esterhai's report asserted that there was more than one school of thought on the best treatment option after the initial procedure, one of which being the avenue pursued by Appellee. Therefore, we conclude that the trial court properly exercised its discretion in denying Appellants' motion *in limine* to preclude two schools of thought testimony as irrelevant. *See Catlin*, *supra* at 922; *Smith*, *supra* at 137. Appellants' first claim lacks merit.[5]

_____

[5] We acknowledge that, in the summary of argument section of their brief, Appellants state that the trial court committed error in its two schools of thought jury instruction. (*See* Appellants' Brief, at 15). However, this is an entirely different issue from the challenge discussed above, which addressed whether the court properly denied Appellants' pre-trial motion *in limine* to preclude two schools of thought testimony. (*See id.* at 16-18). Additionally, to the extent that Appellants are trying to contest the jury charge, we conclude that the issue is waived on several bases.

Initially, we observe that, during the charging conference, Appellants' counsel expressly stated, "I would not object to [the] two schools of thought [instruction] as to after the initial reduction, the failure to reoperate [sic] or re-reduce or follow through[.]" (N.T. Trial, 10/31/14, at 15). Consistent with counsel's requested language, when the court provided the jury with the two schools of thought instruction, it advised that the doctrine only was
*(Footnote Continued Next Page)*

In their second issue, Appellants maintain that the trial court erred in denying their post-trial motion for a new trial on the basis that the verdict was against the weight of the evidence where all experts agreed that a malrotation over ten degrees was unacceptable. (*See* Appellants' Brief, at 19-20). Appellants' claim is waived and would not merit relief.

> The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority. Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention. This Court will not act as counsel and will not develop arguments on behalf of an appellant. . . .

*Coulter v. Ramsden*, 94 A.3d 1080, 1088 (Pa. Super. 2014), *appeal denied*, 110 A.3d 998 (Pa. 2014) (citations and quotation marks omitted); *see also* Pa.R.A.P. 2119(a)-(e) (mandating that appellate brief contain

---

*(Footnote Continued)* ⸻⸻⸻

to be applied "to [Appellants'] claim that [Appellee], after the initial reduction and casting, failed to further reduce the fracture adequately." (*Id.* at 32; *see id.* at 31). Appellants' counsel did not object to the court's charge. (*See id.* at 32).

Also, Appellants did not challenge the jury instruction in their post-trial motion, Rule 1925(b) statement, or statement of questions involved. (*See* Post-Trial Motion, 11/03/14, at 1-2; Rule 1925(b) Statement, 1/27/15, at 4-8; Appellants' Brief, at 5). Indeed, other than Appellants' statement in the summary of the argument section of their brief, the argument section only contains a passing reference to the charge, and otherwise abandons any argument regarding this issue. (*See* Appellants' Brief, at 15, 17). Therefore, for all of these reasons, any challenge of the two schools of thought jury instruction is waived.

pertinent discussion and citation, references to the record, and statement of place of raising issue).

Here, Appellants' brief on this issue falls woefully short of our Rules' requirements. (**See** Appellants' Brief, at 19-20). It does not contain any citation to legal authority, references to the record, identification of where evidence in the record may be found, or a statement of the place of raising or preserving the weight of the evidence claim. (**See id.**). Instead, it contains a summary recitation of the testimony, viewed in the light most favorable to Appellants, and concludes with the statements:

> We know that the rotation was at [twenty-five] degrees as was indicated by the CT scan or at most [twenty] degrees by Dr. Esterhai [and] was still double what all the doctors, Reid, [Appellee,] and [Appellants'] expert testified was the maximum accepted standard.
>
> Therefore, the jury's finding of no negligence is contrary to the facts and law and a new trial should be ordered.

(**Id.** at 20).

This "discussion" falls well-below that required for an appellate brief, and we decline to "act as counsel and . . . develop arguments on behalf of [A]ppellant[s]." **Coulter**, **supra** at 1088. Appellants' second issue is waived. **See id.**; **see also** Pa.R.A.P. 2101, 2119(a)-(e).

Moreover, we observe that Appellants' claim would not merit relief. Our standard of review of a weight of the evidence challenge is well-settled:

> Appellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against

the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court may award a judgment notwithstanding the verdict or a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. When a fact finder's verdict is so opposed to the demonstrative facts that looking at the verdict, the mind stands baffled, the intellect searches in vain for cause and effect, and reason rebels against the bizarre and erratic conclusion, it can be said that the verdict is shocking.

**Haan v. Wells**, 103 A.3d 60, 70 (Pa. Super. 2014) (citations and quotation marks omitted).

In this case, despite Appellants' representation to the contrary, there were conflicting viewpoints presented to the jury about a leg's acceptable and normal range of rotation. (**See, e.g.** N.T. Trial, 10/27/14, at 56; N.T. Trial, 10/29/14, at 117, 166; N.T. Trial, 10/30/14, at 51). Therefore, because the jury was free to believe all, part, or none of the evidence presented, we conclude that the trial court properly exercised its discretion when it found that the verdict was not shocking to one's sense of justice.

*See Haan*, *supra* at 70.   Appellants' second issue, even if not waived, would not merit relief.

Judgment affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/17/2015